IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF TEXAS

GALVESTON DIVISION

| | | |
|---|---|---|
| RALPH FIGGS | § | CASE NO. 3-11-CV-00306 |
| | § | GALVESTON, TEXAS |
| VERSUS | § | WEDNESDAY, |
| | § | DECEMBER 7, 2011 |
| KIRBY CORPORATION, ET AL | § | 10:53 A.M. TO 12:44 P.M. |

<u>MOTION HEARING</u>

BEFORE THE HONORABLE JOHN R. FROESCHNER
UNITED STATES MAGISTRATE JUDGE

APPEARANCES:
FOR THE PLAINTIFF:                    SEE NEXT PAGE
FOR THE DEFENDANT:                    SEE NEXT PAGE
CASE MANAGER:                         SHEILA ANDERSON
COURT RECORDER:                       LORRAINE TREVIÑO

PREPARED BY:

JUDICIAL TRANSCRIBERS OF TEXAS, INC.
P.O. Box 925675
Houston, Texas 77292
281-277-5325 (office) ◊ 281-277-0946 (fax)
www.judicialtranscribers.com

Proceedings recorded by electronic sound recording,
transcript produced by transcription service.

**APPEARANCES:**

For the Plaintiff:                         RICHARD J. BURCH, ESQ.
Bruckner Burch, PLLC
8 Greenway Plaza, Suite 1500
Houston, Texas 77046
713-987-8788

MICHAEL A. JOSEPHSON, ESQ.
Fibich, Hampton, LeeBron,
Briggs and Josephson, LLP
1150 Bissonnet
Houston, Texas 77005
713-751-0025

For the Defendants,           JOHN BRIDGES BROWN, ESQ.
KIRBY CORPORATION, KIRBY    Ogletree, Deakins, Nash, Smoak,
INLAND MARINE, LP          and Stewart, PC
8117 Preston Road, Suite 500
Dallas, Texas 75225
214-987-3800

1     <u>GALVESTON, TEXAS; WEDNESDAY, DECEMBER 7, 2011; 10:53 A.M.</u>

2         **THE COURT:**  All right.  Just for purposes of the

3 record this is Galveston Civil Case 2011-306, Ralph Figgs

4 versus Kirby.

5         Could I get appearances for the record?

6         **MR. JOSEPHSON:**  Michael Josephson on behalf of the

7 Plaintiffs.

8         **THE COURT:**  Okay.

9         **MR. BURCH:**  Rex Burch on behalf of the Plaintiffs.

10         **THE COURT:**  Yes.  Please, sit down.

11         **MR. BROWN:**  John Brown for Defendants.

12         **THE COURT:**  Okay.  I've read the submissions, and I

13 don't necessarily want you to just repeat everything that's in

14 them, but I do have some questions I'm curious about.  How are

15 you going to prove that these guys -- really you need to prove

16 to show that these guys should be getting overtime?  Is that

17 20 percent rule going to be sort of dispositive?

18         **MR. BURCH:**  Well, the 20 percent is the standard --

19         **THE COURT:**  That's what I mean.  Okay.

20         **MR. BURCH:**   -- that the Fifth Circuit has applied,

21 and so that will be the standard that's applicable.  And the

22 way that the Fifth Circuit has instructed us to apply that

23 sort of lends itself to a class determination.

24         **THE COURT:**  Right.  Okay.  I just wanted to make

25 sure that I was on the page about that, because I'm concerned

4

1    that Mr. Figgs' last three years he only worked 13 point

2    something percent.  If that's true, and I don't know if it's

3    true and I'm not ready to say it's true --

4                 MR. BURCH:  Right.

5                 THE COURT:  -- but if it were true, then he would

6    not himself qualify for overtime.  Correct?

7                 MR. BURCH:  If it were true, and it's not --

8                 THE COURT:  That's what I mean.

9                 MR. BURCH:  -- then, yes, he would not qualify for

10   overtime --

11                THE COURT:  Okay.

12                MR. BURCH:  -- at least perhaps -- it depends on

13   how you interpret the Fifth Circuit's rule.  There are cases

14   from --

15                THE COURT:  Well, that's why I asked.

16                MR. BURCH:  -- Alabama, for example --

17                THE COURT:  Sure.

18                MR. BURCH:  -- that say if, for certain periods,

19   for example for a several month period, even according to

20   their analysis --

21                THE COURT:  Sure.

22                MR. BURCH:  -- Mr. Figgs was working more than

23   20 percent of his time unloading and loading, and, in fact,

24   it's a several month period towards the end of his employment

25   where even under their restricted definition of what

1  constitutes non-seamen's work, he's more than 20 percent.

2  But it would seem to me that that doesn't

3  address the issue of whether or not class certification is

4  appropriate, that addressed the issue of whether or not on the

5  merits we win or lose.

6  **THE COURT:**  Right.  But what I'm saying is do we

7  want to certify this thing if the suspicion is nobody's going

8  to work 20 percent of the time in tankering.

9  **MR. BURCH:**  Well, obviously if we thought that that

10  was the case, we would not have brought this lawsuit.

11  **THE COURT:**  Oh, I understand.

12  **MR. BURCH:**  Right.  But --

13  **THE COURT:**  But now we've got at least some evidence

14  from the Defendants saying, "We've gone through these logs,

15  and I'm assuming the logs" -- at least my experience has been

16  that those logs are kind of the bible on board ships and I

17  wouldn't assume that they're tampered with, but assuming you

18  could get your hands on the logs, and assuming again, which I

19  think is probably true, at least for the last -- until these

20  lawsuits started getting filed, they will indicate when

21  tankering was going on, as opposed to just going up and down

22  the river.

23  **MR. BURCH:**  Well, that --

24  **THE COURT:**  How else would you calculate the

25  20 percent?  I mean if the records -- and the logs are --

1     let's say if the logs are reliable and if the logs indicate

2     when they were doing tankering operations and when they were

3     not, then -- I mean, is your client just coming in and

4     basically saying, "I don't care what the logs say, I did more

5     work than that," going to be enough evidence?

6          **MR. BURCH:**  Well, it would be, obviously, under the

7     standards set by our Circuit.

8          **THE COURT:**  So it'd just be a cross-examination

9     problem, like here are the records, the records show that you

10    weren't doing it, but you're going to tell the jury that you

11    did, and that's gets you there?

12         **MR. BURCH:**  Well, the -- yes --

13         **THE COURT:**  Okay.

14         **MR. BURCH:**  -- it would.  In fact, the Seventh

15    Circuit said as much yesterday or the day before in a similar

16    case.  So the question here though is:  What do these logs

17    really show?  And I understand that they are important

18    documents, but if you look at what the regulations actually

19    require them to show, the only thing that they would capture

20    is the actual starting of the unloading --

21         **THE COURT:**  Right.

22         **MR. BURCH:**  -- and the ending of the unloading.

23    And none of the other tankermen duty -- or the other tankering

24    duties that we consist -- contend are non-seamen's work would

25    be captured.  For example, the minding of the stove, the

1      taking care of the equipment that is used to load and unload,

2      or the checking of the temperature of the stove to make sure

3      that that's -- which is all done throughout the trip and would

4      be added to the time both loading and unloading under this --

5              THE COURT:  I thought that _Owens_ case said that you

6      don't count that stuff.  Did I miss that?  I thought it said

7      you just have to focus on the loading and unloading, but if

8      you're just monitoring the progress of the fuel or whatever it

9      is you're loading during the navigating of the ship, I didn't

10     think that counted, but am I wrong about that?

11             MR. BURCH:  I think you are wrong about that, Your

12     Honor.

13             THE COURT:  Okay.

14             MR. BURCH:  At least that's my interpretation of it.

15             THE COURT:  Yes, that's fine.

16             MR. BURCH:  But --

17             THE COURT:  I thought it said that's transportation

18     problems as opposed to tankering and -- but I can look again,

19     I was just curious but --

20             MR. BURCH:  Right.  And if you look at how the Fifth

21     Circuit said, "Look, how do we analyze this, you know,

22     exemption?"  And what you do is you look at the general duties

23     that are performed by the employees most often in that

24     position, and then you look at the primary purpose of the

25     position that the employee is working in.  And I don't know

1    how you analyze a position other than on a class basis.

2    Right?  Because what we --

3              THE COURT:  Right.

4              MR. BURCH:   -- need to look at is what does this

5    position do, where does this position fit within the

6    company --

7              THE COURT:  Well, but if we --

8              MR. BURCH:   -- what's the primary purpose of it?

9              THE COURT:   -- if I understand what you're saying,

10   if we were to do that, and just because they're called

11   "tankermen," we need to certify this class --

12             MR. BURCH:  No.

13             THE COURT:  Okay.  Because that's -- I mean they're

14   called tankermen --

15             MR. BURCH:  Sure.

16             THE COURT:   -- there's the Defendant can say about

17   that --

18             MR. BURCH:  Right.

19             THE COURT:   -- and that means they're in charge of

20   tankering, or whatever it's called --

21             MR. BURCH:  Right.

22             THE COURT:   -- and while they're tankering perhaps

23   they should be getting overtime if they can reach whatever

24   amount of time they're engaged in that, and then I guess after

25   that you figure out what else is tankering, like does it mean

1    from the second he starts getting the hoses to hook them up,

2    till the second they come off, is that called tankering --

3         MR. BURCH:  Right.

4         THE COURT:   -- what else is included in tankering,

5    I assume that's what you're saying, and you would like it to

6    even be while they're just going up and down the river if

7    they're monitoring the cargo, that would be tankering as

8    opposed to just the operation of the vessel.

9         MR. BURCH:  Yes.  When you look at the cases --

10        THE COURT:  Which is what I thought the *Owens* case

11   said, but I guess -- I'll just have to take a look at it

12   again.

13        MR. BURCH:  Right.  If you look at the cases, they

14   call it minding the stove, I believe is the phrase --

15        THE COURT:  Yes.

16        MR. BURCH:   -- that they use.

17        THE COURT:  Right.

18        MR. BURCH:  And again, that is a merits question --

19        THE COURT:  I understand that.

20        MR. BURCH:   -- and not a class certification

21   question.

22        THE COURT:  I understand that.

23        MR. BURCH:  According to this --

24        THE COURT:  But my -- where I'm going with it,

25   obviously --

1              **MR. BURCH:**  Sure.

2              **THE COURT:**  -- is if we're going to certify it and

3      we find out that none of these guys work more than 10 percent

4      of their time doing tankering stuff, then we sure wasted a lot

5      of money and a lot of time, and, you know, doing that, as

6      opposed to sort of concentrating on whether -- let's say for

7      example Mr. Figgs could ever get a case to the jury based on

8      whatever evidence he's going to have, which means a

9      certification decision may get postponed a little bit while we

10     concentrate on who the Plaintiffs are in this case.

11              And I know you worry about the statute of

12     limitations running and that kind of thing, but these guys are

13     still not being paid overtime.  Right?

14              **MR. BURCH:**  That's true, although --

15              **THE COURT:**  So I mean they've got to --

16              **MR. BURCH:**  -- that doesn't help the people that

17     are former employees --

18              **THE COURT:**  Right.

19              **MR. BURCH:**  -- it doesn't help the people who --

20              **THE COURT:**  Right.

21              **MR. BURCH:**  -- are continuing to work.

22              **THE COURT:**  Yes.

23              **MR. BURCH:**  I mean their statute continues to be

24     what it is.  And Blessey asked for exactly the same thing in

25     the *Blessey* case.

1          **THE COURT:**  Yes, but they don't --

2          **MR. BURCH:**  In fact, they filed a motion for summary

3     judgment --

4          **THE COURT:**  Yes.

5          **MR. BURCH:**  -- saying there's no way that this

6     guy -- I they think they had -- they even had a lower number

7     under their interpretation of what constitutes seamen's

8     duty --

9          **THE COURT:**  Okay.

10         **MR. BURCH:**  -- than does Kirby, for Mr. Figgs

11    anyway.

12         **THE COURT:**  Okay.

13         **MR. BURCH:**  And Judge Atlas said, "Look, it's

14    crystal clear that under the law of this Circuit and this

15    District that the question of conditional certification

16    doesn't turn on merits."  Right?  You may have a winner, you

17    may have a loser.  Right?  But that's not the issue here.

18         **THE COURT:**  I understand.

19         **MR. BURCH:**  And the Courts have uniformly rejected

20    the notion that, "Oh, you have to prove your case prior to

21    getting conditional" --

22         **THE COURT:**  Sure.

23         **MR. BURCH:**  -- "certification."

24         **THE COURT:**  And I understand that.

25         **MR. BURCH:**  Right?

1          **THE COURT:**  But some cases do say, But if it's going

2     to be silly to do it, we shouldn't make everybody go through

3     it.

4          And that's why I wondered where we fell on this

5     20 percent rule, and what ultimately is going to have to be

6     proven for each of these tankermen to say, "I fall in the

7     class."  I mean, let's say for example, let's say you get --

8     we certify it and you get let's say 50 percent of the

9     tankermen join up --

10          **MR. BURCH:**  That would be great, but --

11          **THE COURT:**  Well, and then --

12          **MR. BURCH:**  Yes.

13          **THE COURT:**   -- they may just join because they say,

14     "Wow, yes, I might get some money and it'd be great."

15          **MR. BURCH:**  Right.

16          **THE COURT:**  So they join, but then they come in and

17     they take their deposition and you say, "Well, did you work 20

18     percent of the time doing tankering?"

19          And he says, "Heck, no, sometimes I didn't do

20     any at all, I just went up and down the river, and then when I

21     did, you know, maybe 5, 6 percent of my time."

22          It wasn't -- so what, does he just go out, does

23     he not qualify for overtime because he didn't do enough

24     tankering, and only those that do enough tankering qualify, or

25     does he get to coattail in and say, "Well, I'm a tankerman.

1    It's nice that, you know, my buddy Al Smith does 50 percent

2    tankering, so I get to same overtime he gets even though I

3    don't do any tankering sometimes for two or three shifts."

4              **MR. BURCH:**  Well, you --

5              **THE COURT:**  What do you do in a --

6              **MR. BURCH:**  -- could ask that question in the

7    reverse, too.  I mean you could say, you know, what happens if

8    some guy works three weeks and during that three weeks he

9    happened to have a heavy period like Mr. Figgs did during the

10    last several months --

11              **THE COURT:**  Sure.

12              **MR. BURCH:**  -- of his thing, does that guy get

13    overtime because of those few weeks?

14              **THE COURT:**  Okay.

15              **MR. BURCH:**  And, you know, maybe so, maybe not,

16    that's a common question that you will answer as a matter of

17    law for the class.  Right?

18              **THE COURT:**  Well, what's the answer to that

19    question?

20              **MR. BURCH:**  It would seem to me that under the

21    guidance given by the Fifth Circuit, which is that you look at

22    the position, you look at what's the primary purpose of the

23    position and what do people most often do in that position,

24    and because it's a positional analysis, then that gives you

25    the answer.  That guy was in a position that's primary purpose

1    was to load or unload, so, yes, he gets overtime, or --

2           **THE COURT:**  Even if he doesn't do it.  I mean, let's

3    say for six months -- he happens to pull a shift where he does

4    maybe 5 percent of his time for six months is tankering, the

5    rest is cooking and cleaning and maintenance and working on

6    the engines and that canned type of work.  I mean does he just

7    get overtime for all those hours, even though he's really not

8    doing what a tankerman does, he's just got the title?

9           **MR. BURCH:**  Well, your argument would be a second

10   stage, here's somebody who's not really --

11          **THE COURT:**  No, I'm not trying to argue with you --

12          **MR. BURCH:**  Sure.  No, no.  No, no --

13          **THE COURT:**  -- I'm trying to figure out --

14          **MR. BURCH:**  -- I appreciate this conversation.

15          **THE COURT:**  -- whether it makes sense to certify

16   it.  So I mean what do you think the answer to that is?  Does

17   that tankerman automatically get overtime?

18          **MR. BURCH:**  My guess is that that guy isn't

19   really -- and I apologize for informality there --

20          **THE COURT:**  No.  No.

21          **MR. BURCH:**  -- that that person isn't really

22   working as a tankerman.  Right?

23          **THE COURT:**  Right.

24          **MR. BURCH:**  That you have to show that the people

25   are, in fact, working as a tankerman.

1        **THE COURT:**  Well, but I mean he is a tankerman, and

2  when called upon --

3        **MR. BURCH:**  The job --

4        **THE COURT:**  -- he'll do the tankering work, but he

5  just happens to be there when tankering doesn't need to be

6  done very much at all, and maybe let's not say none, but let's

7  say 10 percent of his time at the most is tankering, but

8  90 percent of the time is just doing regular seaman --

9  able-bodied seaman's work.

10        **MR. BURCH:**  That would be inconsistent with the job

11  description that Kirby had.

12        **THE COURT:**  Sure.

13        **MR. BURCH:**  At least prior to this lawsuit.  Right?

14        **THE COURT:**  Right.

15        **MR. BURCH:**  What Kirby said that these guys do,

16  prior to getting sued for unpaid overtime.

17        **THE COURT:**  Right.

18        **MR. BURCH:**  Because if you look at their job

19  descriptions, again, prior to the lawsuit, they say, "What

20  your job as a tankerman is, is to load and unload cargo."

21  They defined tankering as the lack of unloading and loading --

22        **THE COURT:**  Sure.

23        **MR. BURCH:**  -- of cargo.  I mean that's the --

24        **THE COURT:**  Right.

25        **MR. BURCH:**  -- prior to this lawsuit that was

1   indisputably the primary purpose.  The fact that the Fifth

2   Circuit what you look at --

3           **THE COURT:**  Yes.  Well --

4           **MR. BURCH:**  -- for that position.

5           **THE COURT:**  -- is the job description that was

6   attached to the pleadings in here, the new job description

7   that came out after this lawsuit got filed?

8           **MR. BURCH:**  No.

9           **THE COURT:**  Okay.  Because that -- it really says

10  they're to prepare the ship for tankering operations, doesn't

11  it?  And then it also says they're going to also be deck

12  hands, they're going to do all kinds of other work and -- I

13  mean I've got it here somewhere, but --

14          **MR. BURCH:**  Right.  And the regulations --

15          **THE COURT:**  Yes, here it is.

16          **MR. BURCH:**  -- from the Department of Labor --

17          **THE COURT:**  Yes.

18          **MR. BURCH:**  -- obviously anticipate the fact that

19  people who ride on the boats --

20          **THE COURT:**  Sure.

21          **MR. BURCH:**  -- may do some work, may even do a lot

22  of work --

23          **THE COURT:**  Absolutely.

24          **MR. BURCH:**  -- that is seamen's type work.

25          **THE COURT:**  Right.

1          **MR. BURCH:**  I mean the Department of Labor says,

2    Look, these guys gave you 80 percent of their time doing stuff

3    that's unrelated to the loading and loading of cargo.  But if

4    they do more than 20 percent of their time doing loading or

5    unloading, or if the primary purpose of that position, to use

6    the Fifth Circuit's language --

7          **THE COURT:**  Yes.

8          **MR. BURCH:**  -- is the loading and unloading of

9    cargo, then that position is non-exempt.

10         **THE COURT:**  Well, let me ask you this then --

11         **MR. BURCH:**  Yes.

12         **THE COURT:**  -- if I recall correctly, you first

13   sign on as, what, a trainee, and then when you get enough

14   experience you become a tankerman.  Right?  Isn't that it?

15         **MR. BURCH:**  Generally.

16         **THE COURT:**  And then after that you just go higher

17   and higher and higher.

18              But I mean like you're second rung on the

19   ladder is a tankerman, so you have to qualify for becoming a

20   tankerman, so as soon as you would become a tankerman,

21   regardless of how little work you do as a tankerman, if you've

22   got the title, you get the overtime?  I mean, if you go that

23   way?

24              If you just say, "Well, it's" -- if you're

25   going to call them a tankerman and they've got responsibility

1    to do this, then they're not a seaman anymore, they get

2    overtime because -- you know where I'm going?  Just because

3    they're called a tankerman or they qualify for tankerman, will

4    they be able to prevail in an FLSA case if they only, you

5    know, work as a tankerman for 5 or 10 percent of their time?

6            **MR. BURCH:**  Well, I think what you're asking me is,

7    is a job title enough?

8            **THE COURT:**  Right.  And that's what it sounded like

9    you were saying.

10           **MR. BURCH:**  No --

11           **THE COURT:**  Okay.

12           **MR. BURCH:**   -- I mean, it's clearly not.

13           **THE COURT:**  That's what I thought.

14           **MR. BURCH:**  You have to be doing what Kirby said you

15    would be doing.

16           **THE COURT:**  Right.

17           **MR. BURCH:**  Right?  You have to be doing what Kirby

18    says the job is.

19           **THE COURT:**  And qualified to do it.

20           **MR. BURCH:**  Right.  And qualified to do it.

21           **THE COURT:**  Sure.

22           **MR. BURCH:**  Right.  And if you look at what

23    tankerman training is --

24           **THE COURT:**  Sure.

25           **MR. BURCH:**   -- tankerman training is focused on

1    loading and unloading --

2         **THE COURT:**  Right.  But is --

3         **MR. BURCH:**   -- and safe handling of the stuff.

4    Right?

5         **THE COURT:**  But is the job description and the title

6    the key, or is it the percentage of work you do as a tankerman

7    that is tankering related?

8         **MR. BURCH:**  Well, if you look at conditional

9    certification cases, for example one of the ones they cite in

10   their response to our motion for conditional certification,

11   *Aguirre* (phonetic) from Judge Rosenthal, they make the point

12   that at the conditional certification stage, and this is on

13   page 14, at the conditional certification stage, if you

14   relying on the job description, plus you have some evidence

15   that that's actually what they do, then that's enough for a

16   conditional certification.

17              And they say -- in *Aguirre* they denied

18   certification --

19        **THE COURT:**  Right.

20        **MR. BURCH:**   -- because they said," This is not a

21   case in which the Plaintiffs rely on a job description to

22   support certification as a collective action."

23        **THE COURT:**  Right.

24        **MR. BURCH:**  This is a case --

25        **THE COURT:**  I understand.

1          **MR. BURCH:**   -- where we rely on the job
2     description --
3          **THE COURT:**  Yes.
4          **MR. BURCH:**   -- to support conditional
5     certification.
6          **THE COURT:**  Right.  I know.
7          **MR. BURCH:**  And at this point please understand, and
8     I know you do, that we haven't had discovery.  Right?  And
9     they can say whatever they want about other tankermen, and
10    until we can talk to those other tankermen and get their
11    points of view, we can't really respond to them.
12         **THE COURT:**  Okay.
13         **MR. BURCH:**  And that's part of the purpose for
14    allowing early certification and getting people in, so that we
15    can get a broad view of what is going on here, and so the
16    people who are having their rights determined, who are --
17    because if you say this is seamen's work, this is not seamen's
18    work, that's going to affect every one of those guys.
19         **THE COURT:**  Right.
20         **MR. BURCH:**  Right?
21         **THE COURT:**  Sure.
22         **MR. BURCH:**  Regardless of whether they're in the
23    case or not.  So they at least ought to have the opportunity
24    to be here so that they can chime in on that and they can give
25    you their perspective on it.

1          **THE COURT:**  Okay.

2          **MR. BURCH:**  And so --

3          **THE COURT:**  And that's kind of why I was trying to

4     get a feel for what ultimately -- and I'm not trying to judge

5     the merits of the case, but what becomes a submissable case?

6     I guess that's the easiest way to say it.

7          **MR. BURCH:**  Right.

8          **THE COURT:**  Whose case gets submitted to the jury

9     and whose doesn't if we go to trial, and is it the 20 percent

10    rule that gets you there, and if you're a -- regardless of

11    whether you're a tankerman or not, if you can't reach the

12    20 percent rule over the last three years, you don't get to

13    the jury?  I mean, is that basically where it is?

14         **MR. BURCH:**  I think that on the merits --

15         **THE COURT:**  On the merits, that's what I'm talking

16    about.

17         **MR. BURCH:**  -- on the merits.

18         **THE COURT:**  Yes.

19         **MR. BURCH:**  -- that the 20 percent rule will apply.

20         **THE COURT:**  Okay.

21         **MR. BURCH:**  I mean, I don't see any --

22         **THE COURT:**  Okay.

23         **MR. BURCH:**  -- anyway around it.

24         **THE COURT:**  So then what we'll have is we'll have

25    some tankermen who get -- assuming they can cross the

22

1    20 percent threshold, those tankermen will get overtime and

2    the tankermen who don't cross it, don't.

3         **MR. BURCH:**  And I hate to give you a lawyer

4    answer here, for lack of a better term --

5         **THE COURT:**  Well, no, you're a lawyer, I expect a

6    lawyer to answer.  But I'm just trying to say --

7         **MR. BURCH:**   -- but the Fifth Circuit has told us,

8    Look, when you apply this 20 percent rule, don't do it in a

9    mechanical fashion, don't do it in a fashion that doesn't make

10   sense.

11        **THE COURT:**  Okay.

12        **MR. BURCH:**  Get a general sense for the position,

13   and they use the term "position," not employee, in fact, they

14   distinguish it from employee.

15        **THE COURT:**  Yes.

16        **MR. BURCH:**  Right?  Look at the position, look at

17   the purpose, the primary purpose of the position, look at the

18   job functions of the position.  Right?  And then you -- and

19   can employees drop in and drop out if they're doing something

20   crazy, like you've got a guy that you've classified as a

21   tankerman, it says tankerman on his paycheck, but he's parking

22   cars.

23        **THE COURT:**  Okay.

24        **MR. BURCH:**  Right?

25        **THE COURT:**  Yes.

1       **MR. BURCH:**  That's his job, his job is to park cars

2    in the parking lot onshore --

3            **THE COURT:**  Yes.

4            **MR. BURCH:**   -- is that guy going to be class

5    member?  No, he's not.

6            **THE COURT:**  Sure, but this is a weird case

7    because -- I mean, it's not weird, it's kind of unique because

8    of the small number of crew members that go on each of these

9    barges.  I mean, there's a -- there are two people that steer

10   it, and then there are two tankermen.  Right?

11           **MR. BURCH:**  I think that's the general --

12           **THE COURT:**  And there might be a trainee, but there

13   are two tankermen.

14           **MR. BURCH:**  Right.

15           **THE COURT:**  And as a consequence --

16           **MR. BURCH:**  It's only a five or six person --

17           **THE COURT:**   -- yes, they do everything from what I

18   understand, because even in the job description it talks about

19   the duty -- they do the duties of the deck hand and -- well,

20   it just goes on and on and it's got a bunch of stuff in there

21   that's not tankering work.  If I'm looking at the right one,

22   the Kirby job description that looks like this?  Yes, that's

23   it.

24           **MR. BURCH:**  Yes.  Okay.

25           **THE COURT:**  I can see it.

1    **MR. BURCH:** Yes.

2    **THE COURT:** I mean, it's hard to read and I used a

3    magnifying glass, that's why I'm having trouble reading it

4    right now, but the second paragraph says they also perform the

5    duties of a deck hand -- let's see -- well, whatever.  Just

6    leave it at that.  I mean, a deck hand is a deck hand.

7    **MR. BURCH:** Sure.

8    **THE COURT:** We know what deck hands do, they tie

9    lines, they make sure that the barges are together, they

10   clean, they cook, they maintain the engines, they do all kinds

11   of stuff.

12   But just to follow up on that, and then, well,

13   while I'm thinking about it, what do you do -- what ultimately

14   will occur if -- let's say only 10 percent of the tankermen

15   employed by Kirby actually perform more than 20 percent of

16   their jobs as tankering, and at the end of the day 90 percent

17   of them don't even come close, does that rule you were talking

18   about treating them commonly mean that the guys who really do

19   a bunch of tankering don't get overtime because the other

20   90 percent drag them down?

21   **MR. BURCH:** Again, if you apply it the way the Fifth

22   Circuit has said to apply it, that could be the result that

23   you reach now.

24   **THE COURT:** Okay.

25   **MR. BURCH:** There is some tolerance because one of

25

1      the factors is, you know, what does the employee do in that
2      position.  Right?  And just like you could say, "Okay, here's
3      somebody who is parking cars out in the parking lot and he's
4      so different from these other people, that he wouldn't be a
5      seaman."  Right?
6              THE COURT:  Sure.
7              MR. BURCH:  So he would get overtime.
8              THE COURT:  Sure.
9              MR. BURCH:  You could say, Okay, these 10 percent of
10     the people, these people are doing something so different from
11     what the normal position is, that they get overtime.  Right?
12             THE COURT:  Well, no, what I was saying is these are
13     the tankermen that are actually doing a lot of tankering.
14             MR. BURCH:  Right.
15             THE COURT:  But there are only 10 percent of them
16     that cross over the 20 percent threshold, the other
17     90 percent, you know, they don't, they do maybe 5 percent of
18     their time, 10 percent max as tankermen.
19                 Do you carve out -- do the 10 percent who are
20     actually doing a bunch of tankering, as opposed to the other
21     ones, get overtime, or does the 90 percent prevail so that
22     we're saying, "Well, they may be called tankermen, but in
23     truth, you know, only a few of them do enough to qualify
24     for" --
25             MR. BURCH:  They're actually deck hands.

1          **THE COURT:**  -- "to get out of the exemption, the

2     seaman exemption, the rest clearly fall within it."  So is

3     that a special class of tankermen who just are lucky enough

4     that they be -- they're on the barges that do a lot of

5     tankering, or what?

6          **MR. BURCH:**  It would seem to me that if you had some

7     specified group of people who are like, "Here are people who

8     do a ton of tankering" --

9          **THE COURT:**  Well, they just happened to be --

10          **MR. BURCH:**  Right?

11          **THE COURT:**  -- lucky for that three-year period, or

12     whatever it is.

13          **MR. BURCH:**  Right.

14          **THE COURT:**  I mean, they get assigned to this barge,

15     you know, they just happened to be assigned to the barges that

16     do a lot of stops and tankering I guess.  But, yes, I mean,

17     but do they drag the whole class down?  Do they not get

18     overtime even though they deserve it, but nobody else does,

19     the other 90 percent don't?

20               And the reason I'm asking this --

21          **MR. BURCH:**  Right.

22          **THE COURT:**  -- is because I want to get a feel for

23     that --

24          **MR. BURCH:**  Right.

25          **THE COURT:**  -- because if we decide to certify the

class, does it make sense to ask these people to let us know
whether they feel as though they do enough tankering while
they're working to qualify for what would otherwise be, you
know, admission to the class.

        **MR. BURCH:**  Sure.  And I --

        **THE COURT:**  As opposed to just --

        **MR. BURCH:**   -- actually thought about that
earlier --

        **THE COURT:**   -- saying, "You're a tankerman, so
here."

        **MR. BURCH:**   -- when you mentioned it, like because
this is a self-selecting class, so to speak, people have to
affirmatively opt in --

        **THE COURT:**  Right.

        **MR. BURCH:**   -- you could say, "Look, if you don't
think you unload and -- unload and do duties related to
loading and unloading and minding the stove more than
20 percent of your time, don't jump in."  Right?

        **THE COURT:**  Right.

        **MR. BURCH:**  You could do that.  And --

        **THE COURT:**  Well, does it make sense to do that?
That's why I was trying to find out what the magic 20 percent
deal is.  I mean, if that's what you have to get over, do we
just want to talk to the tankermen who think they do that and
see how many there are, or do we let them all come in only to

1       find out that they don't qualify, "So sorry, thanks for

2       joining but you don't do enough tankering."  You know, what do

3       we do?

4              And then the question I've got I guess is:  Do

5       you get special tankermen who get the overtime and a bunch of

6       tankermen who don't because they don't do enough tankering,

7       which is I guess where I was just a minute ago.  Do the

8       90 percent pull the 10 percent down ultimately?

9              **MR. BURCH:**  To me, it seems like you're saying there

10      is a group of employees -- there's one classification.  Right?

11      And we get to the end as a result of the opt ins and we've

12      done the discovery and we find out that there's one group of

13      employees who really does this, and then there's another group

14      of employees that what they really do is something different.

15             **THE COURT:**  Yes, it's not really -- that's not quite

16      what I'm saying.  It's just -- what I'm saying is there just

17      happened to be some who, in the last whatever the relevant

18      time period is, were assigned to barges where they happened to

19      do a lot of tankering.  It could be that the next year they'll

20      be on the barge that doesn't do it.

21             So is that the end result, do you just -- do

22      you have to treat each tankerman and each voyage differently

23      depending on how much tankering that guy does and he either

24      qualifies for overtime or he doesn't, or does he just not get

25      it because there aren't enough people consistently getting

1      enough tankering done for the exception to fall by the

2      wayside?  Does that make sense?  Okay.

3                  **MR. BURCH:**  I think it does.

4                  **THE COURT:**  Okay.

5                  **MR. BURCH:**  And, again, I think that because the

6      Fifth Circuit has said you look at this thing on sort of a

7      macro level, that you look at it -- but there is this

8      tolerance for, you know, individual employees who may, for

9      whatever reason, just do a ton of this, that, to me, would --

10     because you could have a deck hand.  Right?

11                 **THE COURT:**  Yes.

12                 **MR. BURCH:**  Let's say you have a deck hand who,

13     for -- and he's classified as a deck hand, always has been

14     classified as a deck hand, but for whatever reason he gets

15     assigned to a vessel where the tankerman is a drunk.  Right?

16     And the guy never shows up for work, and so he's constantly

17     doing tankermen duties.  Right?

18                 That guy, even though he's classified as a deck

19     hand, if he's spending 50 percent of his time doing tankering

20     duties for two years, that guy's going to get overtime.

21     Right?  I mean, that's just how it's going to be.  And so

22     there's going to be some allowance for the individual

23     situation.

24                 But that's only within the context of the

25     general rule, that the general rule is you look at the

1    position, you look at the -- how it -- what the primary

2    purpose of the position is and what it does.

3            THE COURT:  But isn't -- yes.

4            MR. BURCH:  And if the answer to those two questions

5    are in the employee's favor, the employee wins, it seems to

6    me.

7            THE COURT:  Well, but here's -- okay.  Let's just

8    look at Kirby.  Kirby's got, what, a barge --

9            MR. BURCH:  Right.

10           THE COURT:   -- let's say three barges tied

11   together.  What's the crew?  The crew is the captain, somebody

12   else who can steer the vessel and two tankermen.  Right?

13           MR. BURCH:  I think with --

14           THE COURT:  There are no deck hands.  The tankerman

15   is a deck hand qualified guy, but he is now a tankerman, and

16   they need the tankermen on the barge because of the uniqueness

17   of what a barge does.  Now --

18           MR. BURCH:  I think they actually do have deck hands

19   on some of them, but --

20           THE COURT:  Do they?  On some, or all?

21           MR. BURCH:  On some, not all.

22           THE COURT:  I was under the impression there were --

23           MR. BURCH:  Not all.

24           THE COURT:   -- just four --

25           MR. BURCH:  Not all.

1          **THE COURT:**  Okay.  So --

2          **MR. BURCH:**  Not all.

3          **THE COURT:**  Well, let's just talk about that for a

4     while, and I hate to keep you down here, but I don't want

5     to -- I want to do the right thing.

6          **MR. BURCH:**  Right.

7          **THE COURT:**  If that's the case, if there are just

8     two tankermen on there, then -- and there is no deck hand,

9     then I mean, that's it.  He's just qualified to do the

10    tankering, but he also has to do the other work.  So that's

11    kind of a -- that's a different world than what you're talking

12    about the Fifth Circuit's take a look at these positions all

13    over the place.  I mean, because they aren't.  There's just

14    two tankermen and then there's two people that steer the boat.

15         **MR. BURCH:**  Right.  But, again, the regulations

16    specifically address the employees who are going to -- because

17    they're riding with the boat, they're going to seamen's stuff.

18         **THE COURT:**  Yes.

19         **MR. BURCH:**  Right?

20         **THE COURT:**  Right.  Absolutely.

21         **MR. BURCH:**  I mean, they absolutely address that.

22    And so what we have is we have a position, a shore tankerman,

23    that everybody agrees is non-exempt.  Right?

24         **THE COURT:**  Sure.

25         **MR. BURCH:**  And they say, "Well, because this guy --

1    the vessel tankerman rides on the boat and does some seaman's

2    stuff" --

3            **THE COURT:**  Right.

4            **MR. BURCH:**   -- "he's non-exempt -- or he's exempt

5    and he doesn't get overtime."

6            **THE COURT:**  Right.

7            **MR. BURCH:**  And the regulations, the Department of

8    Labor regulations tell us that that's not the case.  They say,

9    "Look, when you have employees whose primary purpose is to

10   load and off load cargo."

11           **THE COURT:**  Yes.

12           **MR. BURCH:**  Right?

13           **THE COURT:**  Well, I guess --

14           **MR. BURCH:**  Even if they do some --

15           **THE COURT:**   -- maybe I'm stuck on something.  The

16   primary purpose of the barge is to take cargo from one place

17   to another, and obviously you have to have somebody who knows

18   how to unload it, somebody who knows how to load it.

19           **MR. BURCH:**  Right.

20           **THE COURT:**  But while it's going on its route from

21   one place to another, it's more important to have somebody who

22   knows how to make sure it doesn't run aground and make sure

23   that the engine works and does all -- cooks for everybody and

24   these guys happen -- because they're on the ship, I mean, I

25   guess the shore guys just work eight-hour days, I don't know,

1    but these guys, I mean, they're stuck on the boat so they've

2    got to do all this seaman stuff.

3              So is their primary purpose, so to speak,

4    really just loading and unloading cargo, or they just

5    qualified to do that in addition to what really becomes the

6    primary purpose and that is making sure these things don't

7    sink on their way here, making sure they're well maintained,

8    making sure they're tied together, making sure they keep a

9    look out, all those kinds of things that probably eat up more

10   time than just the tankering.

11             They just happened to be qualified to do the

12   tankering, which is the primary purpose when tankering is

13   being done.  But the primary purpose when it's not is to just

14   make sure you get from one port to the next, isn't it?

15        **MR. BURCH:**  Well, if you look at what the training

16   is for a tankerman.  Right?  The training to be a tankerman --

17        **THE COURT:**  Sure.

18        **MR. BURCH:**  -- is handling cargo --

19        **THE COURT:**  Right.

20        **MR. BURCH:**  -- in a variety of senses, loading and

21   unloading, as well as taking care of it during the trip.

22        **THE COURT:**  Sure.

23        **MR. BURCH:**  Right?  And if --

24        **THE COURT:**  Well, I don't know if taking care of it

25   during the trip qualifies as tankerman or not, but --

1        **MR. BURCH:**  Right.  But again, that would be -- if
2    you --
3            **THE COURT:**  Let's just assume it does.
4        **MR. BURCH:**   -- rule that way.  Right?
5            **THE COURT:**  Well, no, let's just assume it does.
6        **MR. BURCH:**  But either way.  Right?  Because they
7    all say it doesn't.  Right?
8            **THE COURT:**  Right.
9        **MR. BURCH:**  Regardless of whether seaworthy or
10   maritime, you consider it to be dispositive or not.  Right?
11   Or my case you consider to be dispositive or not, that'll be a
12   common question that will affect everybody.  And the answer to
13   that question will affect everybody.
14           **THE COURT:**  Well, sure.
15       **MR. BURCH:**  That's not an individualized inquiry.
16   That is a --
17           **THE COURT:**  But for today let's just assume it does.
18       **MR. BURCH:**  Right.  So that's a quintessential class
19   question.  Right?
20           **THE COURT:**  I assume so, yes.
21       **MR. BURCH:**  Right.  And so when you have a case that
22   presents primarily quintessential class questions.  Right?
23   Like what constitutes seamen's work, it's a legal question
24   that's common to the clients, that case is appropriate for
25   conditional certification.

1            And, Judge, I know you asked me a question and
2    I've talked myself away from it --

3           **THE COURT:**  Oh, I don't -- I've asked you a bunch, I
4    don't remember which one.

5           **(General laughter.)**

6           **MR. BURCH:**  But, you know, let me just say that,
7    again, everybody understands, the Department of Labor has
8    understand -- understood since the '30s that people who are
9    riding on the boat are going to do seamen's work.  They may
10   even do a lot of seamen's work.

11          **THE COURT:**  Right.

12          **MR. BURCH:**  Right?

13          **THE COURT:**  Yes.

14          **MR. BURCH:**  But that doesn't change the fact that if
15   your primary purpose is loading and unloading, and at least
16   according to us, taking care of the load in the interim and
17   related duties, taking care of the machines that you use to
18   load and unload, and the hoses that you use to load and unload
19   and all that good stuff, that that person is entitled to
20   overtime.

21           And if you look at what these folks do, what
22   they -- I mean, it's odd to me that they say, "Oh, this person
23   is a tankerman, and a tankerman is somebody who's responsible
24   for loading and unloading," and if they were on shore they'd
25   be entitled to overtime, but because they ride on the boat --

1          **THE COURT:**  Right.

2          **MR. BURCH:**   -- and do some of the stuff that we've

3     known since the '30s they were going to do in addition to

4     their tankering duties --

5          **THE COURT:**  Sure.

6          **MR. BURCH:**   -- they're exempt, and that just is

7     backwards.

8          **THE COURT:**  Well, let me -- but -- well, let me ask

9     this:  Suppose you're a tankerman, but you're on a huge ship

10    that goes from, you know, all the way across the Pacific and

11    then it loads up bunkers and then it comes back and it

12    deposits the bunkers and loads up others, so it's in port

13    let's say for two days, and you're the tankerman.

14               So when you're in port, your job is to tanker.

15    So you're tankering and you're tankering here, but in the

16    meantime when you're just out at sea with these things down in

17    the bunkers and you're just cruising along for the 25 days of

18    the voyage, you're really nothing but an able-bodied seaman

19    who has a tankerman's license.

20          **MR. BURCH:**  Uh-huh.

21          **THE COURT:**  Now if that were the situation, would

22    the fact that he's a tankerman mean he gets qualified for

23    overtime?  Because there are 30 other able-bodied seamen and

24    he's just doing exactly what they do the rest of the time, but

25    just for those two days on the 23-day voyage he's actually

1    doing tankering work.

2         **MR. BURCH:**  And I want to understand your

3    hypothetical.  In the interim he's not doing anything --

4         **THE COURT:**  Right.  In the interim he doesn't do

5    anything --

6         **MR. BURCH:**  -- like he gets loaded and it's

7    perfect, he has no responsibility, it would seem to me that

8    he's not, because that guy isn't really working as a

9    tankerman.

10        **THE COURT:**  But he's got the title --

11        **MR. BURCH:**  He's got the --

12        **THE COURT:**  -- and he's got the license --

13        **MR. BURCH:**  He's got a title, but he's not really

14   working as a tankerman.

15        **THE COURT:**  Right.

16        **MR. BURCH:**  What he's really --

17        **THE COURT:**  Well, he's working -- his primary

18   purpose on board that ship is to be available to tanker.

19   Right?  If I heard what you were saying.

20        **MR. BURCH:**  My understanding --

21        **THE COURT:**  It's like because nobody else knows how

22   to do it.  If he's not there, they don't know how to do it,

23   unless they do it from shore.  That's all I was asking.

24        **MR. BURCH:**  Right.  But that's -- yes, but --

25        **THE COURT:**  Because, and the reason I'm asking that

1    is because Kirby is kind of unique because if I read what was

2    said, they're weren't deck hands to do the other work.  There

3    are just two tankermen on there that take turns on shifts, I

4    guess, at least on some of these barges, because I mean, what

5    if it's just one barge or two barges?  They don't need a whole

6    bunch of people scurrying around.  Isn't that what you said?

7            **MR. BROWN:**  You are correct, Your Honor.  That is a

8    typical crew.  You would have the tankermen, who are the only

9    people that do deck hand duties --

10            **THE COURT:**  And tankering.

11            **MR. BROWN:**  -- and then you've got wheelhouse

12    personnel who --

13            **THE COURT:**  Yes.

14            **MR. BROWN:**  -- can drive and steer.

15            **THE COURT:**  That's what I thought you were saying.

16    So it's kind of unique because the tankerman has to be a

17    tankerman in order to be on the barge because they so have to

18    do tankering work, but maybe 90 percent of the time that he's

19    on the barge he's just doing able-bodied seaman work,

20    depending on what qualifies for tankering and what doesn't.  I

21    mean, if he has to measure the thing to make sure it's not

22    leaking and that's tankering, we'd have to figure that all

23    out.

24            But I guess I'm still concerned about where, at

25    the end of the day, this goes if it turns out that most of the

1    tankermen wouldn't qualify for duty of tankering business from

2    the facts of the case.

3              **MR. JOSEPHSON:**  Your Honor, if I could --

4              **THE COURT:**  Yes.  Sure.

5              **MR. JOSEPHSON:**   -- address some of the things that

6    you said?

7              **THE COURT:**  You bet.

8              **MR. JOSEPHSON:**  And I'll try not to repeat what

9    Mr. Burch has said --

10             **THE COURT:**  No.  That's fine.

11             **MR. JOSEPHSON:**  -- but I think that it's important

12   to look at how a person becomes a tankerman, what allows them

13   to be a tankerman.  And they have to meet very specific

14   requirements from the Coast Guard in order to be a tankerman.

15   And those specific requirements obligate them to perform

16   duties while in transit.  It's not a matter of they load it

17   and discharge it and don't do anything else.

18             They're constantly performing tankerman-related

19   duties that are not only a critical part of their job function

20   through Kirby and an important part of what they're trained to

21   do, but it's something that they are licensed to do that no

22   other person is licensed to do.  They have a legal obligation

23   because of their mariner's license and their PIC certification

24   as a tankerman, to constantly perform duties that are related

25   to the safe transfer of cargo.

1          Deck hands can't do that.  That's not their

2     function.  And I appreciate the Court's hypotheticals if

3     someone was at sea for 25 days and didn't do anything else.

4     But that's not the reality --

5          THE COURT:  Right.

6          MR. JOSEPHSON:   -- of the situation.  I mean,

7     that's not how Kirby does business.  Most of these people are

8     in the Gulf Coast.

9          THE COURT:  Sure.  But what I was saying is if you

10    take that approach, like, well, he's qualified to do this,

11    therefore he should get -- we've got -- you got to take Kirby

12    as what it is, and that is it doesn't have any other deck

13    hands, it just has two tankermen because it doesn't need -- so

14    really the majority of their work isn't tankering, regardless

15    of the license and responsibilities that they have.

16         MR. JOSEPHSON:  But it is tankering because it

17    relates to the safe transfer of the cargo, and that's going

18    back to a point that Mr. Burch made in response to one of your

19    questions very early on.  You have the ability to make

20    determinations as to the characterization of certain duties

21    that affect the entire class.

22         THE COURT:  Sure.

23         MR. JOSEPHSON:  I mean, you can look at -- for

24    instance I mean, just if you look at 46 CFR Part 13, look at

25    exactly what it is that an individual has to be qualified to

1    do in order to have their tankerman license.  I mean, there

2    are 13 things --

3              **THE COURT:**  Right.

4              **MR. JOSEPHSON:**   -- that these people do on a

5    regular basis in order to be a tankerman.  This doesn't even

6    take into consideration all the things that they're obligated

7    to do through the Coast Guard in order to ensure that the

8    cargo is shipped safely, or the things that they're obligated

9    to do for Kirby to ensure that the cargo is shipped safely.

10   Those are not duties that Kirby expects anybody but tankermen

11   to perform.

12             And I think that's critical when you go back

13   and you look at the guidance that the Fifth Circuit has given

14   us, and you look at the regulations that are applicable to

15   this position, you have to look at the primary purpose and the

16   reason that Kirby has tankermen on all these vessels is

17   because there is no one else that has the ability to perform

18   these tankermen duties.

19             And courts and the Department of Labor have

20   consistently said, "If you are doing these duties and you are

21   doing them more than 20 percent of your time, you're owed

22   overtime."  And that's how we go back and look at the primary

23   objective of it.  I mean, you -- Kirby cannot do what it does

24   without people that are employed as tankermen performing these

25   types of tankering duties on a regular basis.

1        They have limited their analysis to loading and

2    discharging, but the analysis is so much broader because

3    there's so many other functions that we've identified in our

4    declaration for purposes of meeting these conditional

5    certification standards that are duties that are tankering

6    duties that are not performed by any other employee, and they

7    are performed for the sole purpose of ensuring the safe

8    cargo -- the safe transfer of the cargo from one port to

9    another.

10        And I don't think that there is anything in the

11    briefs that I've seen, or anything in the case law that I've

12    seen that precludes this Court from conditionally certifying

13    this class based on this uniform corporate practice of

14    treating tankermen as exempt employees regardless of the fact

15    that the Coast Guard and Kirby requires these individuals to

16    perform duties that are, as a matter of law, tankering duties

17    that no one else can perform regardless of who's on the

18    vessel.

19        If there's deck hands or not deck hands, these

20    are the only people that can perform these duties, and the

21    duties, if they are doing their job, if Kirby is complying

22    with the Coast Guard requirements, if the tankermen are

23    complying with their licensing requirements in following

24    Kirby's instructions, step-by-step instructions, checklists

25    that tell them exactly what they have to do as a tankerman,

1    not a deck hand, then it is a case that is appropriate for

2    class treatment.

3         It is a case that allows Your Honor to come --

4    at the end of the case, once we know who wants to participate,

5    once we've done the discovery we're entitled to do before a

6    Court makes a merits determination, it is the exact kind of

7    case that Your Honor can look at and say, "Look, if you're

8    doing your job the way Kirby says you've got to do it, the way

9    the Coast Guard says you've got to do it, these cannot, as a

10   matter of law, be exempt functions."

11        You may reach the opposite conclusion, but the

12   fact of the matter is if everybody is abiding by the

13   applicable laws governing tankermen, this Court has the

14   ability to make a legal determination as to whether those

15   duties qualify as tankering duties or traditional seamen

16   duties.

17        **THE COURT:**  Okay.

18        **MR. JOSEPHSON:**  And that's where I think the

19   analysis stops for purposes of today because we've met all of

20   the other standards that the Southern District routinely

21   follows and courts throughout the country follow in making a

22   determination about conditional certification.

23        **THE COURT:**  But that starts -- that takes me right

24   back to where it was when I hit the door, and that is how

25   important is the 20 percent rule?

1          **MR. JOSEPHSON:**  Well, I think it's obviously

2     important, like Mr. Burch said, but I think what is equally

3     important for purposes of evaluating whether this case can

4     proceed collectively, if we're going to look at -- if we're

5     going to look forward and see, well, what happens at the

6     second stage and how does this case get tried, you are

7     ultimately able to look at the primary purpose of the

8     functions that these individuals perform --

9          **THE COURT:**  Okay.

10         **MR. JOSEPHSON:**   -- and make a determination whether

11    or not that position, based on what Kirby says, based on what

12    the Coast Guard says, based on what the opt ins say who

13    self-select to participate in this case, whether those duties

14    are truly tankermen duties.

15         **THE COURT:**  I'm not --

16         **MR. JOSEPHSON:**  And if you -- Your Honor, the other

17    point I'd make, and I'm not trying to avoid your question, but

18    if you just look at the limited snapshot that Kirby gave you

19    in attempt to defeat certification, just relying on the

20    captain's logs -- even though nothing in the CFRs require the

21    captains to actually log all of the different tankering

22    activities that Kirby requires its employees to perform, I

23    mean, they could stipulate to that, that's -- as a matter of

24    law, the CFRs do not require the captains to log those

25    activities -- if you just look at the information that they

1      hand-picked in their own analysis, using the methodology that

2      we take issue with, you still have employees that spend more

3      than 20 percent of their time just loading and discharging

4      without even taking into consideration all the other things

5      these people have to do as a tankerman.

6                      And that, to me, is the most telling.  It not

7      only tells you that there's a way to analyze the evidence to

8      make a determination at the end of the day, but it should also

9      tell the Court that there are people out there with legitimate

10     claims who are working 84 hours a week and not getting paid

11     any overtime as a result of a corporate policy that Kirby has

12     had in place that treats these employees as exempt regardless

13     of the nature of their job or the purpose for which it exists

14     or the fact that they have to, as a matter of law, perform

15     duties that are without a doubt tankering duties that could

16     only be performed by tankermen who hold a license who Kirby

17     has deemed to be qualified to perform these duties, who are

18     trained to perform these duties, and that have to complete

19     these checklists every single day.

20             **THE COURT:**  Okay.  But what if the facts turn out to

21     be that, even if everything you say is true, that turns out to

22     be less than 20 percent of the time they spend on the barge

23     and the rest of the time they spend on the barge, let's say

24     90 percent of their time is just doing regular able-bodied

25     seamen and deck hand works, do they qualify?

1          **MR. JOSEPHSON:**  I think that if the Court makes a

2     determination --

3          **THE COURT:**  I'm not even talking about a

4     determination.  I'm just saying does the 20 percent rule

5     exempt -- I mean, do certain people not get it because they're

6     not performing up to the 20 percent standard, and those that

7     are, do get it?

8          **MR. JOSEPHSON:**  If Your Honor will let me answer

9     that question --

10          **THE COURT:**  Sure.

11          **MR. JOSEPHSON:**   -- in a little bit of an indirect

12     way --

13          **THE COURT:**  Sure.

14          **MR. JOSEPHSON:**   -- I'll get there --

15          **THE COURT:**  No, that's fine.

16          **MR. JOSEPHSON:**   -- but just because -- and I think

17     Mr. Burch and I may be some of the only people, I know

18     Mr. Brown's tried one of these cases, too, but not a lot of

19     collective actions get tried, and there's a lot of different

20     reasons for that.

21          **THE COURT:**  Whatever.

22          **MR. JOSEPHSON:**  But having tried these cases, and

23     having litigated how they get tried for a long, long time,

24     including cases against Mr. Brown, the Court is never, ever

25     going to be called upon to make an individualized analysis of

1    what people spend their time doing on a week-by-week basis.

2                    And not only is there well settled FLSA

3    jurisprudence that says that's not the right approach to

4    trying these cases, but the Fifth Circuit has given us

5    guidance that that type of approach is inappropriate here.

6                    So fast forward, Your Honor allows us to notify

7    these people that the clock is ticking, that their claims are

8    running, that they have to participate if they want to get

9    their back wages, we go through the discovery process.  At

10   some point in time Your Honor is going to be asked to make a

11   determination as to how the parties are going to present

12   evidence.

13                   They have the burden of proof, we've got the

14   burden of proof on some things.  Most courts look at a

15   sampling --

16            **THE COURT:**  Sure.

17            **MR. JOSEPHSON:**   -- they look at a sampling in a

18   random way.  Mr. Brown and I did that in a case in South

19   Carolina where we had 3,000-plus people in the case and the

20   Court ordered us to take, I believe it was a 10 percent sample

21   through random selection.  Mr. Brown got on the -- used a

22   computer program that randomly selected these people and those

23   were the people that were going to present -- do depositions

24   or answer discovery.

25                   That type of approach, whether it's random,

1    whether there's a statistician involved that tells you how to

2    pick people, whatever it is, when the parties pick the people

3    that they think are good representatives, at some point in

4    time the Court is going to have a body of evidence before it

5    that we'll probably say is representative of the fact that if

6    you look at the position as a whole and you look at the

7    expectations of the company, the particular purpose for which

8    the tankerman position exists, suggests that it's a non-exempt

9    job.

10         And what you're going to hear Kirby say and

11   with that you've got Mr. Crow (phonetic) here who represents

12   enterprise, and we'll have him here soon on our case.

13   Whatever the case may be both sides are going to present you

14   with evidence that they think is representative of the class.

15   And from that evidence you're going to be able to make very

16   logical inferences as to what the nature of the particular

17   position is and what its primary purpose is.

18         **THE COURT:**  Well, let me ask you this, it's the same

19   question I asked Mr. Burch a while back, and that is:  Suppose

20   the evidence at the end of the day shows that only 10 percent

21   of these tankermen engage in enough tankering to get past the

22   20 percent line.  Ninety percent don't.  Don't even come close

23   because of the voyages they happen to be on and that kind of

24   thing.

25         Does the fact that the 10 percent are not

1    seamen and they get -- they would otherwise qualify for

2    overtime, does that drag the other 90 percent into the

3    overtime class, or do you just say, "Sorry, there aren't

4    enough of you that do enough of it, so you don't get the

5    overtime because we have to have the same decision apply to

6    everybody?"

7         **MR. JOSEPHSON:**  Your Honor, I will tell this, and

8    this is coming from a lot of experience in litigating this

9    particular issue, you will never have to make a determination

10   as to whether or not a class consists of 10 percent of the

11   people that are qualified to make a claim and you got

12   90 percent that don't because you will have decertified that

13   case.  You will have broken it up and you will forced us to

14   file individual claims on behalf of all these people that

15   believe that they have meritorious claims.  You'll never get

16   there.

17              You're going to be asked to make a

18   determination at the second stage whether or not the case can

19   even proceed collectively.  And if there -- if the facts

20   reveal -- and I tell everybody this, Mr. Carter, Mr. Brown,

21   everybody, if the Court looks at the evidence and makes a

22   determination that these people are so individualized, that

23   you have such disparity within the putative class, I'll agree

24   to decertify it.

25              **THE COURT:**  Well, it's not --

1          **MR. JOSEPHSON:**  And I will bring individual claims

2     and we can litigate each one.

3          **THE COURT:**  Well, it's not that so much as what the

4     true facts of these cases -- because let's say it's 50-50,

5     let's say 50 percent of them do it and 50 percent never do.

6          **MR. JOSEPHSON:**  Sure.

7          **THE COURT:**  Does that 50 percent get overtime, even

8     though it doesn't do the -- doesn't pass the 20 percent limit?

9     That's why I asked when I first came out, how important is

10    this 20 percent limit going to be ultimately if this case has

11    to go to trial?  Do we just throw it out because of the

12    uniqueness of tankermen on the kind of barges we've got here,

13    or does it really have some significance if they're just a

14    crew of two people that steer the boat and two tankermen?

15         **MR. JOSEPHSON:**  I think that Mr. Burch said it best

16    when he said you have to look at it from a macro perspective.

17    Okay.

18         **THE COURT:**  And so we don't -- when we don't look at

19    it from the 20 percent rule, it's insignificant?

20         **MR. JOSEPHSON:**  You've got to look at the nature of

21    the duties and I think that, you know, we're all bound by what

22    the Fifth Circuit says, and in *Sea River* I mean, it says it's

23    the nature of the work the employee most often performs in his

24    particular position and the primary purpose of the position

25    that the employee occupies.  That's the determination --

1          **THE COURT:**  But doesn't most often mean just what it

2     says, don't we have to look at what he most often does as

3     opposed to just because he's a tankerman?

4          **MR. JOSEPHSON:**  But you put it -- if he is a

5     tankerman and he works for Kirby and he's got a license, he is

6     doing these duties more than 20 percent of the time.

7          **THE COURT:**  Well, we don't know that.

8          **MR. JOSEPHSON:**  Using the Defendant's own narrow

9     view of what -- how you calculate the 20 percent using the

10     captain's logs and nothing else --

11          **THE COURT:**  No, I'm not even --

12          **MR. JOSEPHSON:**   -- those people are there.

13          **THE COURT:**  Well, my question is, is what if, in

14     fact, the evidence is that they're not doing that tankering,

15     or even if we give you the benefit of the doubt and every time

16     they do something that relates to the cargo, as opposed to

17     just to the maintenance of the vessel, that still comes short

18     of the 20 percent line.

19          **MR. JOSEPHSON:**  I think the difference, Your Honor,

20     using what you just said, because I think you raised a great

21     point and neither of us have talked about it, you are getting

22     into the damages aspect of the case.  And it is conceivable in

23     these kinds of cases that you have people that would, in a

24     particular week, not qualify for the exemption.  I mean,

25     that's conceivable in every single FLSA case regardless of

1   whether it's misclassification or an off-the-clock unpaid

2   overtime case.

3               That determination isn't something that you

4   look at at the first stage --

5               THE COURT:  No, I'm just trying to figure out

6   whether this -- when the statute would apply and when it

7   wouldn't, and if it applies to every tankerman that works for

8   Kirby, or just some tankermen, and if the evidence comes out

9   where only half of them would otherwise qualify under the

10  20 percent test and half of them routinely do not qualify

11  under the test, does FLSA apply or doesn't it apply.

12              MR. JOSEPHSON:  At what point in the proceeding do

13  you get to that analysis?

14              THE COURT:  I'm just saying let's say we try the

15  case and in the middle of the case it's like, you know, the

16  best I can say is half of them make it, half of them wouldn't.

17  Does the statute apply or doesn't it apply?

18              MR. JOSEPHSON:  Well, I mean, if you rule that

19  they -- that it doesn't apply to half of them, then it

20  wouldn't apply to half of them.  But --

21              THE COURT:  Well, that's what I'm saying.  But it

22  would apply to the other half who just happened to be assigned

23  to those voyages who the next year may get the voyages where

24  they're not doing the tankering work?

25              MR. JOSEPHSON:  But you have to remember, Your

1      Honor, that if these cases, if they make it to trial in a

2      collective action context, it's because the Court has made a

3      determination that these people are similarly situated in the

4      case to proceed collectively, which means that --

5              THE COURT:  Well, let's not say trial.  I mean,

6      let's back up and say once the discovery is closed and we're

7      looking at the decertification motion and the evidence just

8      shows that half of them do and half of them don't, do we

9      decertify because the statute doesn't apply at that time

10     because you haven't reached a preponderance of the evidence,

11     or do we say -- you know, what do we do?  Does the statute

12     fall out at that point in time, or does the statute stay in?

13             MR. JOSEPHSON:  There are so many different avenues

14     available to the Court in that situation --

15             THE COURT:  Okay.

16             MR. JOSEPHSON:   -- that it's almost impossible for

17     me to answer.  I can tell you that no Defendant in these cases

18     is permitted to conduct individualized analysis, absent some

19     court ignoring pretty well settled jurisprudence on what the

20     appropriate approach to discovery is --

21             THE COURT:  Well, let me --

22             MR. JOSEPHSON:   -- which is done on --

23             THE COURT:   -- let's say this --

24             MR. JOSEPHSON:   -- a representative basis.

25             THE COURT:   -- suppose we go ahead and grant your

54

1      motion, now how many Plaintiffs are involved in this now,

2      maybe eight or nine?

3              **MR. BURCH:**  Three.

4              **MR. JOSEPHSON:**  We've got three --

5              **THE COURT:**  Just three?  Okay.

6              **MR. JOSEPHSON:**   -- three, yes, which is significant

7      for these cases --

8              **THE COURT:**  No, no, let's just say --

9              **MR. JOSEPHSON:**   -- because a lot of times it's just

10     one.

11             **THE COURT:**  Let me just -- let's say eight more

12     people decide to join and nobody else does.  So we've got,

13     what, 11 guys.  Now if that's what we've got, wouldn't we do

14     complete individual discovery on each of those cases?

15             **MR. BURCH:**  Yes.

16             **MR. JOSEPHSON:**  I think in that --

17             **THE COURT:**  We would know.  I mean, we would know.

18             **MR. JOSEPHSON:**   -- in that situation we probably

19     would, yes --

20             **THE COURT:**  Yes, because let's say somebody, they

21     don't want to opt in.

22             **MR. JOSEPHSON:**  But that's a determination that's

23     impossible for us to --

24             **THE COURT:**  Well, but you said --

25             **MR. JOSEPHSON:**   -- answer until the make up of the

55

1    class.

2          **THE COURT:**  -- you said in none of these cases will

3    we ever get enough discovery in this --

4          **MR. JOSEPHSON:**  Well --

5          **THE COURT:**  -- but if we only get --

6          **MR. JOSEPHSON:**  -- but that's --

7          **THE COURT:**  -- a couple of people --

8          **MR. JOSEPHSON:**  -- but if we get 11 people, I'm

9    going to call up Mr. Brown and say, "Look, we want to amend

10   and make it an individual lawsuit where people are asserting

11   individual claims because the benefits of proceeding

12   collectively no longer exist."  And that's, I mean, that's --

13         **THE COURT:**  Okay.

14         **MR. JOSEPHSON:**  -- you know, the Court has to rely

15   on experienced wage lawyers to make a determination whether or

16   not it makes sense to have a collective action.  And I think

17   if you're dealing with a handful of people, it may not make

18   sense.

19         **THE COURT:**  Well --

20         **MR. JOSEPHSON:**  But it's hard for me to say.  I can

21   tell you that in other cases I've certainly done that where I

22   only had a handful of people and it was a relatively small

23   class to begin with.

24         **THE COURT:**  Well, let me -- let's ask this then.

25   Let's say I'm the judge and we get eight people that opt in.

1    And then you say, "Well, Judge, we just want to decertify and
2    we want to try eight cases."  I'd say I'm not trying eight of
3    these cases --
4          **MR. JOSEPHSON:**  Well --
5          **THE COURT:**  -- we're going to take this group and
6    we're going to try these eight guys --
7          **MR. JOSEPHSON:**  Fine.
8          **THE COURT:**  -- and we're going to see if FLSA
9    applies to them or doesn't.  Let's say we say it does.  These
10   other people -- what happens to the other people, do they all
11   of a sudden then get elevated to FLSA status because these
12   guys are going to get it and they didn't join the class?
13         **MR. JOSEPHSON:**  No --
14         **THE COURT:**  I mean, is Kirby bound to do that?
15         **MR. JOSEPHSON:**  No, I mean, this isn't a Rule 23 --
16         **THE COURT:**  Okay.
17         **MR. JOSEPHSON:**   -- case.
18         **THE COURT:**  Okay.
19         **MR. JOSEPHSON:**  It's you self-select, you opt in,
20   you're only bound by the judgment if you opt into the case and
21   you're still there at the time it goes --
22         **THE COURT:**  All right.
23         **MR. JOSEPHSON:**   -- to trial.  If it gets
24   decertified, you go proceed individually.  If you didn't do
25   anything, you sat on the sideline and watched, which a lot of

1    employees do --

2              THE COURT:  Sure.

3              MR. JOSEPHSON:   -- it's just the nature of the

4    beast --

5              THE COURT:  Nothing was --

6              MR. JOSEPHSON:   -- there's no effect.

7              THE COURT:  Nothing was --

8              MR. JOSEPHSON:  I mean, certainly it doesn't look

9    good --

10             THE COURT:  Yes.

11             MR. JOSEPHSON:   -- and I can't say I wouldn't, you

12   know, if I were Kirby, think long and hard about whether or

13   not to continue that practice, but it doesn't have -- it's not

14   as if that is a determination on the merits as to non-

15   participating, non-opt ins.

16             THE COURT:  Okay.

17             MR. JOSEPHSON:  Okay.  And that's the beauty of the

18   216(b) provisions is that the concerns that a court has in a

19   Rule 23 context where everybody's bound by the judgment unless

20   they exclude themselves, don't exist because presumably people

21   are getting the notice and making a determination, that they

22   self-select to participate presumably because they've read the

23   notice or they've contacted the lawyers and asked questions

24   and taking into consideration all the information, they

25   decided, "Hey, this is appropriate for me and I want to

1    participate."

2         **THE COURT:**  Do you think we should limit it to those

3    who, in their own individual opinions, think they do at least

4    20 percent or more of their time tankering work?

5         **MR. JOSEPHSON:**  I think it's -- I think that the

6    notice adequately explains in very general terms what the

7    lawsuit is about, and if you look at the pretty extensive body

8    of law governing the types of communications with the class

9    members, most courts have erred on the side of simplicity and

10   not on the side of let's give these lay people a dissertation

11   on what the law is and what the legal standards are --

12        **THE COURT:**  It's not really a dissertation, it's

13   just do you think you do 20 percent tankering work when you're

14   on or not.  There's nothing mysterious about that, or that

15   doesn't take any -- but --

16        **MR. JOSEPHSON:**  I think the idea is --

17        **THE COURT:**  But if we just do tankermen, then we're

18   going to -- then everybody's going to want to jump in because

19   that's all there is on these boats, there are just tankermen.

20   There's no deck hands, there's no nothing, there's just

21   tankermen, so it's basically like if you're a tankerman, you

22   probably should be getting overtime.

23             But the truth is, unless you're a tankerman who

24   does 20 percent of your time tankering, as opposed to just

25   riding along on the boat and tying it up and tying a knot,

1    then you're not.

2         **MR. BROWN:**  Your Honor, you are correct for all the

3    reasons we've been discussing for about an hour.

4         **THE COURT:**  Sorry about that.

5         **MR. BROWN:**  This case does not lend itself to

6    conditional certification.  There is no common policy, plan or

7    decision that violates the Fair Labor Standards Act.

8         **THE COURT:**  Let me ask you this, suppose we do limit

9    it to 20 percent, let's say I say, "Okay, let's see what" --

10   we'll worry about what qualifies and what doesn't during the

11   voyage and let's say we say, "Okay, anybody who thinks they do

12   at least 20 percent of actual tankering work," and supposed

13   800 people join.  Then we've got a situation where we've got a

14   factual dispute I guess over what qualifies for tankering work

15   and what doesn't, we're not limited by the logs, that kind of

16   thing.

17            But we might have a whole bunch of people that

18   say, "Yes, we do," and wouldn't that be of some significance

19   if that's what the response is?

20        **MR. BROWN:**  Well, I don't think that the fact that

21   somebody is called a tankerman, a vessel tankerman --

22        **THE COURT:**  Yes, I'm way past --

23        **MR. BROWN:**   -- is not determined yet.

24        **THE COURT:**  I'm way past that.

25        **MR. BROWN:**  And so if we were to invite everybody

1    who thinks they spent --

2              **THE COURT:**  No, you're not --

3              **MR. BROWN:**   -- more than 20 percent of their

4    time --

5              **THE COURT:**  No, I'm saying --

6              **MR. BROWN:**   -- on tankering duties --

7              **THE COURT:**  No, I'm saying if you are a tankerman

8    who's worked in the last three years for Kirby, and we know on

9    the barges that's all they have, they don't have deck hands,

10   they don't have cooks, they don't have cleaning people, they

11   don't have engineers, they don't have anybody.  They've got

12   two tankermen on the barges.

13             So all of them are going to be tankermen,

14   except for the captain I guess -- well, I guess he is, he's

15   qualified to be a tankerman already, isn't he?  Because

16   he's --

17             **MR. BROWN:**  In some cases.

18             **THE COURT:**  Yes, so I mean, once you get above

19   tankerman, you're a tankerman.  So if we just were to say, "If

20   you were a tankerman for Kirby in the last three years, and

21   during your work history as a tankerman you performed more

22   than 20 percent of your time in actual tankering duties, then

23   you can opt in to the this litigation."  And that's basically

24   what we say.

25             And then we get a whole bunch of people that

1    opt into it, then wouldn't that be indicative that this might

2    be a good case to have certified if we put that limitation on

3    it as opposed to just say, "Anybody's a tankerman, jump in,

4    you might get a bunch of money."

5        **MR. BROWN:**  Well, I think that would be a better

6    notice than the one that --

7        **THE COURT:**  Yes.

8        **MR. BROWN:**  -- just says, If you're a tankerman,

9    you can sign up.

10        **THE COURT:**  But I mean, wouldn't that be some --

11    wouldn't that be a future event that would make me say, "Well,

12    I think I did the right thing because we've got enough

13    interest because these people really do think that they do

14    enough tankering work," and now I have to worry about the

15    problem that we've got over here, and that is what qualifies

16    for or doesn't qualify for tankering.  And sooner or later I

17    guess I need to make that decision, unless nobody joins the

18    certification.

19        **MR. JOSEPHSON:**  Then your job would be really easy

20    at that point

21        **MR. BROWN:**  Well, the interest in participating in

22    the case --

23        **THE COURT:**  Yes.

24        **MR. BROWN:**  -- is a factor the Court can consider

25    in determining whether to allow notice to go out.

1          **THE COURT:**  Right.

2          **MR. BROWN:**  It's not determinative.

3          **THE COURT:**  No.

4          **MR. BROWN:**  And what would happen is you would get

5 people that potentially could respond and say, "Well, I'm not

6 really sure, but I'm going to be careful and I'll sign up."

7 And so you're back to having an individualized assessment and

8 going through and evaluating what this person did in their

9 employment for Kirby.

10          **THE COURT:**  Sure.

11          **MR. BROWN:**  And for that reason this isn't an

12 appropriate case because it breaks down.

13          **THE COURT:**  Well, it may break down.  I mean, no

14 question in my mind that it may break down.  But I'm not so

15 sure we can assume that it's going to break down if we try to

16 limit the joinder to some sort of meaningful thing.

17          Which is why I asked right out of the gate,

18 What does this 20 percent really mean and who thinks it's of

19 significance, and obviously everybody thinks it's of some

20 significance.  So does it make sense to just say, you know, if

21 that's what you do, come on?  I mean, do you really think

22 somebody who says, "Yes, I'm a tankerman, but, heck, I haven't

23 been doing tankering work for the last three, four years, I

24 still want to join."  I wouldn't think so.

25          **MR. BROWN:**  I don't know what goes through their

1 minds.

2    **THE COURT:**  Well, sure.

3    **MR. BROWN:**  You know, I know that people say, "Oh,

4 did you sign up, okay, I'll sign up, too."

5    **THE COURT:**  Yes.

6    **MR. BROWN:**  You know, I suspect that that happens.

7 And so I don't think that it would clearly resolve the issue.

8 And so I think you're back to what is the quality of the

9 evidence before the Court today.

10    **THE COURT:**  Well, can I really do that, because I

11 don't have much evidence before me today, and I really can't

12 just say, I will rely on what you tell me to rely on because

13 that's what the logs say, we were only tankering here and only

14 tankering there, if, in fact, other duties qualify for

15 tankering work while the voyage is underway.

16    **MR. BROWN:**  Well, even if someone doesn't like our

17 math in reviewing the ship's log, we have very plain

18 statements that there are vessels on which tankermen haven't

19 done any loading or unloading in a year and a half.

20    **THE COURT:**  Yes, and that's why I said wouldn't it

21 make more sense to see how big this class might be if we limit

22 it to those people who actually have -- are willing to say

23 that -- and I don't know if they have to say it under oath or

24 what, but I mean, they're willing to say, "No, I performed

25 more than 20 percent of my time as tankerman."

1        **MR. BROWN:**  And I think for all these concerns this

2   is not the appropriate case to send out notice.  I don't think

3   that this is a case where you say, "Well, let's look at the

4   job description," that'll --

5        **THE COURT:**  No, I don't --

6        **MR. BROWN:**  -- answer our case here.

7        **THE COURT:**  I agree with you wholeheartedly there.

8        **MR. BROWN:**  And because you have to go tankerman by

9   tankerman, I don't think that this is a case where you say,

10   well, they're all similarly situated --

11        **THE COURT:**  Okay.

12        **MR. BROWN:**  -- here's the common thread.  The

13   common thread can't be the job title because as we've

14   discovered, the job title tells us that they do all kinds of

15   things beyond tankering duties.  And so I think that at this

16   point Mr. Figgs and the people who have joined this case

17   continue on and we pursue their claims --

18        **THE COURT:**  Okay.

19        **MR. BROWN:**  -- and we do discovery, we find out

20   what's there.

21        **THE COURT:**  And I guess you just say Judge Atlas got

22   it wrong when she decided tankermen that work for somebody --

23   and she didn't even deal with the 20 percent rule that I could

24   see.  I thought I read through all that stuff and nobody was

25   making that argument.

1          **MR. BROWN:**  You know, it's interesting that Judge

2     Atlas, is that she said -- she didn't say that this was

3     automatically going to be conditionally certified, she said,

4     "Look at what *Blessey* did."  They did not provide the type of

5     evidence to show a meaningful distinction between all these

6     tankermen.  Okay.  Well, let's look at the records, let's find

7     out what the records show that they did.

8          **THE COURT:**  Sure.

9          **MR. BROWN:**  And that's how we came up with those

10    numbers.  So this is not the *Blessey* case.

11         **THE COURT:**  No, I know it's not, but she nonetheless

12    certified tankermen, and I assume *Blessey* has the same kind of

13    operation as Kirby, in that they probably have two tankermen

14    and two wheelhouse people on the boats, so she said --

15         **MR. JOSEPHSON:**  Your Honor --

16         **THE COURT:**  Yes.

17         **MR. JOSEPHSON:**   -- we disagree with Mr. Brown's --

18         **THE COURT:**  Well, sure, I do, too.

19         **MR. JOSEPHSON:**   -- assessment, of course.  You

20    know, I was just thinking to myself, having known John for a

21    number of years, if there was ever a case that he thought it

22    was appropriate for conditional certification, the answer is

23    probably no, because what he's telling you is what every

24    defense lawyer in courtrooms across the country tells the

25    judge, and the fact of the matter -- and I think Judge Atlas

1    nailed it, and I think Judge Smith nailed it when he ruled in

2    *ENG versus Maxim Healthcare Services*, one of the other

3    opinions we attached -- the stuff that they're talking about

4    doesn't defeat conditional certification.

5              If it did, the FLSA would have to be changed by

6    Congress because there would never be an appropriate situation

7    for class treatment of a wage violation.

8              **THE COURT:**  No, I understand.

9         **MR. JOSEPHSON:**  And these individuals would have to

10   clog your docket filing individual claims, then you'd have to

11   litigate the same case over and over and over again, and

12   having done that, and having been decertified, I can tell you

13   that judges hate it.

14             **THE COURT:**  Sure.

15        **MR. JOSEPHSON:**  And looking forward, that's why

16   courts allow conditional certification because it gives these

17   people an opportunity to pool their resources, proceed

18   collectively --

19             **THE COURT:**  I understand.

20        **MR. JOSEPHSON:**   -- based on a very limited showing.

21   And in this case the Court is not only, I think, been provided

22   with more than enough evidence, but you actually have more

23   evidence than Judge Atlas had in conditionally certifying the

24   *Coffin* case against Blessey.  But you've got documents from

25   Kirby, statements from Kirby made in public filings and in

1    other places that support everything that we're asking you to

2    do today, and validate everything that we're saying.

3              And if the law was such that a party had to

4    come in and prove his case just to be able to notify similarly

5    situated people, think of all the workers --

6              **THE COURT:**  Sure.

7              **MR. JOSEPHSON:**  -- that would lose money --

8              **THE COURT:**  And I understand that.

9              **MR. JOSEPHSON:**  -- for every week that they work

10   that they weren't notified about this case.

11             **THE COURT:**  Sure.

12             **MR. JOSEPHSON:**  Or as Judge Atlas said I believe in

13   *Villatoro v Kimsone* (phonetic), years ago, Mr. Burch's case,

14   there's a lot of people that aren't going to join these

15   lawsuits without the protective cloak of the Court.   And

16   while the notice isn't an endorsement, certainly getting

17   something with the style of the case, with a -- that is a

18   communication that's been blessed by the Court, is going to

19   put people at ease that a company like Kirby, I'm not saying

20   they would do this, or any other company, that they're not

21   going to be retaliated against for coming forward.

22             **THE COURT:**  But you've got to admit, this kind --

23   these cases that involve these crews that just have tankermen,

24   I mean, you've got to be at least a tankerman to even get on

25   these barges it sounds like.

1      **MR. JOSEPHSON:**  That's not true, Your Honor.

2      **THE COURT:**  Well, it --

3      **MR. JOSEPHSON:**  I mean, why would they have a deck

4   hand training program if everybody was a tankerman?  I mean,

5   how could you ever go work for this company if -- as a

6   greenhorn, someone that had never had a job before, if you

7   didn't have a tankerman license.  I mean, this idea that every

8   one of their barges, these vessels pushing 30,000-barrel

9   barges with enough oil or chemical to destroy and environment,

10   that they are not going to be manned by deck hands, as well as

11   tankermen?

12          I mean, that -- I think that's insane to think

13   that -- and not to say you're insane, Your Honor --

14      **THE COURT:**  No, that's fine.

15      **MR. JOSEPHSON:**   -- I think it's crazy to think that

16   they would have this deck hand training program if they --

17      **THE COURT:**  Do you know that that's true?

18      **MR. JOSEPHSON:**  I do know it's true.  I mean, they

19   say --

20      **THE COURT:**  No, no.  No, no, I mean, do you know

21   that they have deck hands on the two men -- let's say they've

22   got two barges tied together going up and down the Mississippi

23   River, or wherever they go.  Do you know whether they have

24   deck hands on board, or do they just accept guys that are

25   already qualified as tankermen to be crew members?  Do you

1    know?

2         **MR. JOSEPHSON:**  I know that they say that the

3    typical career path --

4         **THE COURT:**  Right.

5         **MR. JOSEPHSON:**   -- starts as a deck hand.

6         **THE COURT:**  Right.

7         **MR. JOSEPHSON:**  So, and they say that --

8         **THE COURT:**  But does that necessarily mean on the

9    barges?

10        **MR. JOSEPHSON:**   -- in order to be admitted into

11   their tankermen trainee --

12        **THE COURT:**  Yes, but my question is, do they have

13   deck hands on these barges?  Do you know?

14        **MR. BURCH:**  Yes --

15        **THE COURT:**  Mr. Figgs ought to know.

16        **MR. BURCH:**   -- some of them, but not all.

17        **MR. JOSEPHSON:**  We know that some of them do and

18   some of them don't, but what we know, and I think this is the

19   most important thing, is it doesn't matter as long as we

20   follow the Fifth Circuit's guidance and look at the primary

21   purpose of the tankerman position.

22        **THE COURT:**  Well, but then what does the 20 percent

23   rule mean?

24        **MR. JOSEPHSON:**  Well, then I think we've solved, or

25   at least addressed some of the concerns by talking about

1    including something in the notice that allows people that are

2    self-selecting to make a determination whether they spent more

3    than 20 percent of their time at a hitch performing tankerman

4    duties.

5            **THE COURT:**  Okay.

6            **MR. JOSEPHSON:**  Or a week or however the parties

7    agree to do it, but --

8            **THE COURT:**  Very well.

9            **MR. BURCH:**  And, Judge, we've applied the 20 percent

10   rule in front of Judge Hoyt in a much, much larger collective

11   action with Mr. Crow back here, a 1300-employee collective

12   action where the 20 --

13           **THE COURT:**  Weren't tankermen though, were they?

14           **MR. BURCH:**  They were not, but it's the same

15   20 percent rule.

16           **THE COURT:**  Yes, sure.

17           **MR. BURCH:**  And obviously the guidance that was laid

18   down in how you apply the 20 percent rule by the Fifth Circuit

19   in *Sea River Maritime* was adopted by Judge Hoyt in *Fluinsky v*

20   *Luby's* (phonetic).  And he said, "Look, you know, that is a

21   standard that sort of lends itself to collective treatment."

22               And again, if we get to the second stage and

23   the facts come out the way Your Honor is hypothesizing they

24   might today.  Right?

25           **THE COURT:**  Yes.

1          **MR. BURCH:**  You have options.  The Sixth Circuit --
2    well, several circuits have now said, "Look, if you get to the
3    end and there are problems, there are some groups that you
4    think are in, some groups that you think are out, you have the
5    authority," and at least in the Sixth Circuit the obligation
6    to subclass.  Right?  And say, "Okay, well, here's a group of
7    folks that we can look at the captain's log for," you know,
8    just --

9          **THE COURT:**  Whatever.

10         **MR. BURCH:**  -- for one way of doing it.  Right?  We
11   can look at the captain's log and see if these guys are like
12   Mr. Figgs, who in his last year of employment most of the
13   time, you know, more than half of the time was working more
14   than 20 percent --

15         **THE COURT:**  Okay.

16         **MR. BURCH:**  -- on tankering duties.

17         **THE COURT:**  Now what -- well, let's -- and I'm just
18   curious, I've never tried one of these cases, and this had
19   kind of got a unique factual scenario, so let's just -- let me
20   just think that out.

21         **MR. BURCH:**  Right.

22         **THE COURT:**  Suppose we do decide we have to divide
23   them into subclasses.  These guys never -- these particular
24   people who have joined would never qualify because they
25   admittedly don't do enough.

1          **MR. BURCH:** Right.

2          **THE COURT:** These guys are close, you know, and

3     these guys definitely get it.  So we've got these different

4     classes and these guys get it, so these guys don't, and so the

5     only cases we try will be the people in the middle.

6          **MR. BURCH:** Could be.

7          **THE COURT:** Okay.  And then what would keep Kirby

8     from just saying, "Well, you know, you're next shift you're

9     going out" -- you know, "you've been doing too much tankering

10    work, so why don't you catch this barge next time and you

11    catch that one and you catch that one?"

12         **MR. BURCH:** Well, but that's what --

13         **THE COURT:** What's the end result of the judgment?

14    Do they just get their back pay and we don't worry about what

15    happens in the future, or is Kirby then obligated to pay these

16    guys forever overtime whether they do the 20 percent rule or

17    not, or what does the Court really accomplish other than

18    giving them back pay if they cross over the threshold?

19         **MR. BURCH:** Well, I mean, that's not a small thing,

20    Your Honor.

21         **THE COURT:** No, I know.

22         **MR. BURCH:** I mean, that --

23         **THE COURT:** But I mean, what's the end -- what does

24    it make Kirby do other than settle up and worry about whether

25    they're continue doing it that way or not, because now they

1      can manipulate it by moving these guys around?  And even

2      though they're tankermen, we don't -- they're never going to

3      be on a ship where they do more than 20 percent of their time

4      over any given shift time.

5              **MR. BURCH:**  Is it manipulating, or is it compliance?

6              **THE COURT:**  Well, that's what I'm saying --

7              **MR. BURCH:**  Because it seems to me --

8              **THE COURT:**  -- are they obligated to comply --

9              **MR. BURCH:**  Yes.

10             **THE COURT:**  -- or can they just assign these guys

11     like I guess they always can to the ships that they want them

12     to be on at any given time.

13             **MR. JOSEPHSON:**  That's how those guys work.  I mean,

14     most of them are assigned to the same vessel --

15             **THE COURT:**  Yes, but that's Kirby's decision, isn't

16     it?

17             **MR. JOSEPHSON:**  Well, I think it's a lot of the

18     company --

19             **THE COURT:**  I'm sorry?

20             **MR. JOSEPHSON:**  I was going to say from the

21     individuals that we represent from the other people that have

22     retained us for cases we haven't filed suit on, the majority

23     of them seem to work on the same vessel for an extended period

24     of time.  It's not as if they are getting moved around --

25             **THE COURT:**  I understand.

1          **MR. JOSEPHSON:**   -- week after week, but -- and I'm

2     sorry for interrupting you.

3          **THE COURT:**  No.

4          **MR. BURCH:**  I was just thinking, I mean, it seems to

5     me, yes, they are obligated to comply with the overtime

6     laws --

7          **THE COURT:**  Well --

8          **MR. BURCH:**   -- and if they want to take mitigating

9     factors by saying, "Okay, you know, this assistant manager who

10    we wouldn't let hire or fire and so we lost, we're now going

11    to give him the authority to hire and fire."  Right?  If they

12    want to change the position such that it --

13         **THE COURT:**  No, I'm not even saying that.

14         **MR. BURCH:**   -- becomes exempt or non-exempt --

15         **THE COURT:**  They just want to change the assignment

16    so that they can make sure none of these guys qualify for

17    the -- if the 20 percent rule means what it means, that none

18    of these guys ever qualify for the 20 percent rule.  So what

19    enforcement power do we have in the future of a judgment that

20    we entered in a case like this, given the uniqueness of these

21    tankermen positions on the Kirby barges?

22         **MR. BURCH:**  Well --

23         **THE COURT:**  Do we worry about that, or not worry

24    about it?

25         **MR. BURCH:**   -- I don't think we can, and believe

1    me, I would love for there to be injunctive relief under the

2    FLSA from private lawsuits, but there is not.

3              THE COURT:  Okay.  So --

4              MR. BURCH:  And --

5              THE COURT:  -- we solve this problem, but we don't

6    necessarily mean that from here on out Kirby's going to have

7    to pay overtime.  It's only going to have to pay overtime if

8    it allows its tankermen to work more than 20 percent.

9              MR. BURCH:  Well, yes, if it violates the law --

10             THE COURT:  That's money.

11             MR. BURCH:  -- it has to pay overtime.

12             THE COURT:  Sure.

13             MR. BURCH:  That's right.

14             THE COURT:  Okay.

15             MR. BURCH:  If it doesn't violate the law --

16             THE COURT:  Very well.

17             MR. BURCH:  -- then it doesn't have to pay

18   overtime.

19             THE COURT:  Okay.

20             MR. BURCH:  So if we encourage them to comply with

21   the law --

22             THE COURT:  Okay.

23             MR. BURCH:  Right?  Then, yes, we have accomplished

24   a good thing.

25             THE COURT:  Fair enough.  So we get to one subclass

of guys, let's say 10 guys qualify for the subclass, they get
their back pay, we have decided the middle class does and then
these people don't.  Then all Kirby would have to do
theoretically is make sure these guys no longer work 20
percent of the time --

       **MR. BURCH:**  Or pay overtime.

       **THE COURT:**  Yes, or they just have to pay
overtime --

       **MR. BURCH:**  Right.

       **THE COURT:**  -- but that's it.  I mean, Kirby could
just say, Okay, well, you know, the gigs up, you're just not
going to work 20 percent of the time in overtime.  You're a
tankerman, great, we need tankermen, but we're not going to
obligate ourselves to pay.  They could do that and there's
nothing this Court could do about it because of their past
sins.

       **MR. BURCH:**  But that's always true.  Right?  I
mean --

       **THE COURT:**  Well, I mean --

       **MR. BURCH:**  -- the fact that a position is non-
exempt today, right, it doesn't mean you can't change the way
the position works --

       **THE COURT:**  No.

       **MR. BURCH:**  -- change the job duties that it's
performed and turn it into an exempt position.

1            **THE COURT:**  Yes, but let's say this is Walmart and

2      we determine that Walmart's been cheating women all the time

3      and now it has to pay women not only now, it's going to have

4      to pay them overtime in the future --

5            **MR. BURCH:**  Right.

6            **THE COURT:**  -- without retaliating against them,

7      that's a different kind of case than a case that has two

8      tankermen on board a barge who may or may not qualify on any

9      given voyage for the overtime.  We don't worry about that?  I

10     mean, that's --

11           **MR. BURCH:**  Well, we --

12           **THE COURT:**  -- we can't force it down Kirby's

13     throat.  They could just say --

14           **MR. BURCH:**  But isn't it --

15           **THE COURT:**  -- all right, we've lost that one but

16     we're not going to lose again.

17           **MR. BURCH:**  But aren't you saying that it's being --

18     that they are changing as a result of that decision?

19           **THE COURT:**  Just changing their -- they're not

20     changing their tankerman's description, they're not changing

21     what he does, they're not changing anything, they're just

22     changing --

23           **MR. BURCH:**  But they are changing --

24           **THE COURT:**  -- anything, they just changing his

25     shift.

1          **MR. BURCH:**  They are changing what he does.

2          **THE COURT:**  They're just changing his shift.

3     They're just saying, you know, You're working too much as a

4     true tankerman, we need to put you on this barge that's

5     going -- that's taking a 21-day deal up the river so that all

6     you have to do is these little bitty peripheral tankering

7     things that are never going to qualify for overtime.  You're

8     just going to be a deck hand for the next 21 days till you hop

9     off in Minneapolis.

10          **MR. BURCH:**  Right.  So --

11          **THE COURT:**  Then we're going to put you on it coming

12     back.  I mean --

13          **MR. BURCH:**  So they are changing to comply.  That's

14     the point though.  Right?

15          **THE COURT:**  Well, that's what I'm saying.  They're

16     changing in order to avoid having to pay, but -- and there's

17     nothing we can do about that.  Right?

18          **MR. BURCH:**  I don't think so.

19          **THE COURT:**  And maybe the answer is, yes --

20          **MR. BURCH:**  Right.

21          **THE COURT:**   -- there's nothing you can do about it.

22     Kirby has the right to move its employees around any time it

23     wants to.

24          **MR. BURCH:**  As long as it complies with the law.

25          **THE COURT:**  That's what I'm saying.

1       **MR. BURCH:**  Yes.

2       **THE COURT:**  And there's nothing about compliance

3  with the law that says they can't reassign these guys to

4  another vessel, is there?

5       **MR. JOSEPHSON:**  No.

6       **THE COURT:**  No.

7       **MR. JOSEPHSON:**  I mean, they can do whatever they

8  deem to be appropriate, you know, subject to the Fair Labor

9  Standards Act and --

10      **THE COURT:**  And that's what I'm saying.

11      **MR. JOSEPHSON:**  -- they're --

12      **THE COURT:**  So there's no future enforcement as a

13  result of this cause of action.

14      **MR. JOSEPHSON:**  No, and we haven't -- we're not

15  seeking that.  There's nothing that allows us to make such

16  a --

17      **THE COURT:**  Okay.

18      **MR. JOSEPHSON:**  -- request of this Court.

19      **THE COURT:**  So really it'd just be what they owe the

20  subclass of guys they can qualify.

21      **MR. JOSEPHSON:**  The people that join --

22      **THE COURT:**  So we don't get a global application of

23  this to all the tankermen if we go the subclass route.  It

24  could be we'll just have a few guys that qualify for overtime

25  and the rest don't.

1       **MR. JOSEPHSON:**  It could be.

2       **THE COURT:**  Okay.

3       **MR. JOSEPHSON:**  It could be.

4       **THE COURT:**  And they get it --

5       **MR. JOSEPHSON:**  We won't know until the second

6   stage, but it could be.

7       **THE COURT:**  All right.  Okay.  All right.  Well, I

8   mean, that kind of answers my questions.  You guys want to say

9   anything else?

10      **MR. BURCH:**  No, Your Honor.

11      **MR. JOSEPHSON:**  I would like to say it's very nice

12  that you had this hearing.  In a lot of these cases the courts

13  make determinations on the merits and it's always good to talk

14  about --

15      **THE COURT:**  Well, sure.

16      **MR. JOSEPHSON:**   -- these issues on the front end

17  so --

18      **THE COURT:**  Absolutely.  It's been fun though.

19      **MR. JOSEPHSON:**   -- we appreciate that.

20      **THE COURT:**  Yes.

21      **MR. JOSEPHSON:**  On behalf of the clients, I don't

22  think we have anything else to add.

23      **THE COURT:**  Okay.  Anything else you want to say?

24      **MR. BROWN:**  You know, I just wanted to point out one

25  thing.

1          **THE COURT:**  Yes.

2          **MR. BROWN:**  You mentioned earlier about Plaintiff's

3     counsel that they didn't quite understand why Kirby was doing

4     what it was with these vessel tankermen, and the practice has

5     existed for decades.

6          **THE COURT:**  Oh, I'm sure.

7          **MR. BROWN:**  It goes all the way back to FLSA.  If

8     you look at the *Sea River* case, Kirby has divided up these

9     tankering duties consistent with what the Plaintiff was going

10    after.  You know, in the *Sea River* case the Plaintiff didn't

11    complain about his work as a tankerman or seaman tankerman, or

12    even as an apprentice tankerman.  He only complained that the

13    seaman exemption did not apply to him when he was a member of

14    a shore-based strike team, which was akin to Kirby's shore

15    days tankermen.

16         **THE COURT:**  Right.

17         **MR. BROWN:**  So the practice is nothing new.  And

18    obviously that distinction is significant, because the shore

19    days tankermen is spending all of their time, they're focused

20    on loading and unloading.

21         **THE COURT:**  Sure.

22         **MR. BROWN:**  Versus a vessel-based tankerman who

23    lives on the vessel, works on the vessel, answers to the

24    vessel's captain, and does all of the deck hand duties as we

25    pointed out is consistent --

1          **THE COURT:**  Right.

2          **MR. BROWN:**   -- with the job description, so.

3          **THE COURT:**  Yes, I understand that.  But I'm

4    assuming you can see that if a tankerman were able to come

5    into court and prove that he -- 25 percent of his duties were

6    tankering and the Court believed that or a jury believed it or

7    whatever, then that person would qualify for overtime,

8    wouldn't he?

9          **MR. BROWN:**  No, I wouldn't agree with that.

10         **THE COURT:**  Oh, you wouldn't?

11         **MR. BROWN:**  Because I don't believe that --

12         **THE COURT:**  Okay.

13         **MR. BROWN:**   -- we don't agree that loading and

14   unloading cargo is non-seamen's work.  We've presented

15   evidence and --

16         **THE COURT:**  Yes, but that's wasn't -- my

17   hypothetical was I believe it, if in a non-jury case, I'm the

18   judge and I discern -- and I believed that 25 percent of what

19   they did was -- qualifies for tankering in my opinion, and I

20   reject your opinion about that, then would then qualify for

21   overtime?

22         **MR. BROWN:**  Well, that would be consistent with the

23   regulation, that they would be on overtime.

24         **THE COURT:**  That's what I mean.

25         **MR. BROWN:**  But, you know, I guess as we said, we

1    disagree with the premise about --

2            **THE COURT:**  Right.

3            **MR. BROWN:**  -- whether tankering is --

4            **THE COURT:**  Oh, sure.

5            **MR. BROWN:**  -- seamen's work or not.  And I would

6    also say the Fifth Circuit said you can't apply that 20

7    percent rule in a mechanical fashion.

8            **THE COURT:**  No, I know, but --

9            **MR. BROWN:**  You have to look at the position overall

10   that that employee has and how they do it.

11           **THE COURT:**  That's why I used 25 percent.  I'm just

12   going to boost it up a little bit.

13           **(General laughter.)**

14           **THE COURT:**  But it might.  I mean, if you lose on

15   your basic premise about what qualifies and what doesn't and

16   then the judge or the jury says, Yes, we think that's

17   tankering, then that becomes an issue down the line.

18   Somewhere there's a percentage of work that would qualify for

19   overtime, I would assume.

20                   But, okay.  What about these other motions?

21   I've got the motion to unseal that settlement.  Do you really

22   care about that?

23           **MR. JOSEPHSON:**  I do.  I mean, I don't think there's

24   a legitimate basis to seal the --

25           **THE COURT:**  Well, didn't your guy agree to keep it

1    confidential?

2          **MR. JOSEPHSON:**  Sorry, I didn't hear you?

3          **THE COURT:**  Didn't your man agree to keep it

4    confidential when he signed it?

5          **MR. JOSEPHSON:**  I think he agreed to keep it

6    confidential.

7          **THE COURT:**  Yes.

8          **MR. JOSEPHSON:**  I don't think that -- I think to me,

9    as a proponent of open files and not sealing documents --

10         **THE COURT:**  Okay.

11         **MR. JOSEPHSON:**   -- I do not see the need to seal

12    it.

13         **THE COURT:**  All right.

14         **MR. JOSEPHSON:**  I would certainly not be opposed if

15    they wanted to redact the value of the settlement, but I don't

16    think it's appropriate to seal that.  And I don't like to get

17    into the practice of agreeing to seal things --

18         **THE COURT:**  Okay.

19         **MR. JOSEPHSON:**   -- that I don't think are --

20         **THE COURT:**  Okay.

21         **MR. JOSEPHSON:**   -- supposed to be sealed.

22         **THE COURT:**  All right.  I'm going to keep it under

23    seal just because I don't think it matters.  And if there's

24    some reason I need to disclose it, just file a motion and I'll

25    think about it, but do you agree to keep it confidential?  I

1    don't see any reason why it needs to be public record other

2    than the fact it's under seal and potentially --

3              **MR. JOSEPHSON:**  Sure.

4              **THE COURT:**   -- public record.

5              And as far as the motion to strike is

6    concerned, is there anything you want to say more about that?

7    I mean, I've read it --

8              **MR. BROWN:**  I think it's fairly -- I think

9    everything it says --

10             **THE COURT:**  Okay.  Yes, I think it's drafted in such

11   a way that this guy is voicing opinions and there may not be

12   much basis for some of them, but I don't think he's -- it's

13   just flat -- he says, This is what I believe and so I'm going

14   to deny the motion to strike.

15             And as far as certification, my inclination is

16   I'm probably going to go ahead and grant the motion, but I do

17   want it limited to some sort of a recitation of the percentage

18   of amount of time these guys do, because I really think most

19   people tend to be honest, and, you know, if they know they're

20   not performing, I don't think they're going to jump in the

21   class.

22             But if we're going to go with the 20 percent

23   rule, which sounds like is a good starting point, then we'll

24   just see how much of a reaction we get.  But other than that,

25   I didn't see -- do we need to discuss the other things that

1      you were talking about in your motion, like making sure you

2      get a copy, like make sure we get a third party to do all this

3      sort of stuff as opposed to the normal way where we just let

4      the lawyers for the Plaintiffs send it out, that kind of

5      thing?

6              **MR. BROWN:**  I'll tell you, Your Honor, in my

7      experience usually the Court has directed the attorneys to see

8      if they can come up with an agreement --

9              **THE COURT:**  Sure.

10             **MR. BROWN:**   -- on the language and the process.

11             **THE COURT:**  Right.

12             **MR. BROWN:**  And I've had no discussion with

13     Plaintiff's counsel --

14             **THE COURT:**  Okay.

15             **MR. BROWN:**   -- about those.  I'm glad to do that.

16     If that's not going to occur, we would want to go through our

17     objections to what they've proposed, but it's going to -- it

18     sounds like what they've proposed is going to be modified

19     anyway.

20             **THE COURT:**  To some extent I think as far as who

21     should opt into these classes and if you really don't qualify,

22     then don't bother us.  But as far as a third party getting

23     involved in all this, I don't think I want the expense of that

24     to be borne out by anybody.

25                      And I'm not aware, but I've only done this in a

1    couple of cases, I'm not aware of ever seeing a notice where

2    the defense attorney also gets notice of the joinder or

3    anything like that.  But that doesn't mean it doesn't happen.

4    I'm open to any kind of arguments that you need to make about

5    that if you can't come up with an agreement.

6         **MR. JOSEPHSON:**  We certainly provide the Defendant

7    in every case with a copy of the consent form.  It's filed

8    with the Court --

9         **THE COURT:**  Yes.

10        **MR. JOSEPHSON:**  -- as well for all the world to see

11   what -- where I have trouble, and I'm happy to go through all

12   of Mr. Brown's objectives, I think we addressed them --

13        **THE COURT:**  Yes, you did.

14        **MR. JOSEPHSON:**  -- really thoroughly in our

15   reply --

16        **THE COURT:**  You did.

17        **MR. JOSEPHSON:**  -- so I don't want to take up too

18   much of your time.

19        **THE COURT:**  My real concern about letting the

20   defense lawyer get too involved in the process is that these

21   people may become clients.

22        **MR. JOSEPHSON:**  Well, that's our concern.

23        **THE COURT:**  And for you to be talking with them,

24   even in advance for example of what is going to blossom into

25   attorney-client privilege, just causes me a little bit of

1     concern.  Obviously they're going to call the Plaintiff's

2     lawyers and say, you know, What's the deal, what's going on,

3     how many other people are -- there's nothing I can do about

4     that.

5             But to actually list defense counsel on there

6     as if you've got -- I don't want to be in a position where you

7     as a defense lawyer are calling potential clients of the other

8     side trying to dissuade them, and I don't think --

9         **MR. BROWN:**  That wouldn't happen.

10        **THE COURT:**  -- you would, but it sounds like that's

11    potentially something that could be done, if we were to go

12    along with what seems to be an unusual process of letting

13    defense lawyers be too involved in all of this.

14            I wouldn't have any problem with if the people

15    are going to file a consent -- well, you're going to prepare

16    those -- well, no, they actually sign it.

17        **MR. JOSEPHSON:**  They send it to us, Your Honor --

18        **THE COURT:**  Yes.

19        **MR. JOSEPHSON:**  -- and we would file it with the

20    Court to stop the clock from running on their claim.

21        **THE COURT:**  Yes, and I've got no problem with them

22    being obligated to send a copy to --

23        **MR. BROWN:**  It would be filed with the Court.

24        **MR. JOSEPHSON:**  We ECF it and --

25        **THE COURT:**  Okay.

1          **MR. JOSEPHSON:**   -- provide --

2          **THE COURT:**  And if you trust each other to do that,

3     I mean, that's --

4          **MR. JOSEPHSON:**  Yes, that's --

5          **THE COURT:**   -- sure.

6          **MR. JOSEPHSON:**   -- not a problem.

7          **THE COURT:**  Okay.

8          **MR. JOSEPHSON:**  And I mean, that -- I thought it was

9     inappropriate to have their name on it and I do think it leads

10    to some confusion and I think courts have been pretty

11    consistent in not permitting the defense lawyer --

12         **THE COURT:**  Yes, John.

13         **MR. JOSEPHSON:**   -- to participate.

14         **MR. BROWN:**  There are plenty of cases where courts

15    have put defense counsel's name on there.  The one idea is to

16    let the potential Plaintiff know that the company is

17    represented by counsel, one.  Two, that potential Plaintiff

18    obviously has a right to call me if they want.  But if they

19    have made a decision, I'm going to choose to participate in

20    the case --

21         **THE COURT:**  Sure.

22         **MR. BROWN:**   -- that's easy, you know, you put in

23    language that says, If you've decided to join the case, do not

24    initiate communication with defense counsel.

25         **THE COURT:**  That's fine.  Yes, I've got no objection

1    to putting your name -- or the defense lawyers on there, I

2    just want to make sure it's not --

3            **MR. BROWN:**  I don't think we should put their phone

4    number, Your Honor.

5            **THE COURT:**  I'm sorry?

6            **MR. BROWN:**  I said I don't think we should put

7    their -- if you put their name, I don't think we should put

8    their phone number.  I mean, that runs afoul of the rules of

9    professional conduct.

10            **MR. JOSEPHSON:**  To give them the telephone number?

11            **MR. BROWN:**  Absolutely.

12            **MR. JOSEPHSON:**  No.

13            **MR. BROWN:**  I mean, how can they ethically respond

14    to any inquiry by any Plaintiff knowing that they represent

15    someone that has severely adverse interest to that individual?

16    I mean, that's why we don't put the name on it.  I'll give you

17    a great example, Your Honor, if you'll --

18            **THE COURT:**  Well, let me just stop for just one

19    second.  But what if unknown to all of us there are a bunch of

20    tankermen that say, Yes, I've heard about that lawsuit, what a

21    crock that thing is, we don't do that kind of work, and if I

22    can call Kirby's lawyer, I want to tell them that we don't do

23    that kind of -- I mean, wouldn't -- there's nothing wrong with

24    that, is there?

25            **MR. JOSEPHSON:**  That's a dicey situation.  I mean,

1    they had -- remember they've had access to these people for

2    quite some time.

3          **THE COURT:**  All I'm saying is suppose that is the --

4    I mean, just that's -- if just because if we don't put the

5    phone number on but we'll put his name, it just means they're

6    going to have to take the next step to find the phone

7    number --

8          **MR. JOSEPHSON:**  And I think --

9          **THE COURT:**  -- if they wanted to call and talk --

10   you know, never even thought --

11         **MR. JOSEPHSON:**  Sure.

12         **THE COURT:**  -- about joining the case, but wanted

13   to talk to Kirby's lawyer.

14         **MR. JOSEPHSON:**  I think, Your Honor, that it's wrong

15   to include their information period.

16         **THE COURT:**  Okay.

17         **THE JOSEPHSON:**  I don't think it serves any purpose,

18   it's not the practice in this district.

19         **THE COURT:**  Well, John tells me that it does happen.

20         **MR. JOSEPHSON:**  Well --

21         **MR. BROWN:**  I would have say, in fact, it may have

22   happened in the case that Mr. Josephson referenced earlier.  I

23   mean, I've been involved in several cases --

24         **THE COURT:**  Okay.

25         **MR. BROWN:**   -- where my name and contact

1  information went out.

2       **THE COURT:**  All right.  Here's what -- what I want

3  you do is try to agree on something --

4       **MR. JOSEPHSON:**  Sure.

5       **THE COURT:**  -- and if you can't, then we'll worry

6  about it, but if -- but I will give you this much guidance,

7  first to the caption, the caption's fine with me.  I'm not

8  going to take the caption off of it.  It's a lawsuit, if they

9  join in it's a lawsuit, if they file a consent, it's going to

10  be the caption, that kind of thing.  That'll stay.

11           As far as putting your name and phone number on

12  it, I don't care.  I mean, I'll do it I'm convinced that it's

13  been done in the past, and if it's never been done, I won't do

14  it.  But that's it.  You know, so I mean, if you want to fight

15  over that, we come back down here, call or whatever, I'll make

16  a final decision.  But I've got no objection to putting it on

17  there if it's been done with some regularity or whatever in

18  the past.

19       **MR. BURCH:**  Judge, can we just talk about that for

20  one second?

21       **THE COURT:**  Sure.

22       **MR. BURCH:**  He's correct, Mr. Brown's correct.

23  There are some courts that have done it.

24       **THE COURT:**  All right.

25       **MR. BURCH:**  The courts here, meaning Southern

1    District of Texas, in my experience have not.

2             **THE COURT:**  Have they refused to do it, or just not

3    done it?

4             **MR. BURCH:**  Yes.  We, in fact, cite one of our

5    cases, *Castillo v Subway, Ala Carte Subway*, where the judge

6    says, Look, there's no basis in fact and law for that.  And

7    you obviously have a different view of it.  Honestly, I think

8    it's a discretionary call.

9             **THE COURT:**  I'm sure it is, but --

10            **MR. BURCH:**  So, you know --

11            **THE COURT:**  I'm just -- I don't get the feeling

12   anybody's sneaky in here today.

13            **MR. JOSEPHSON:**  Well, basically if you decide the 20

14   percent rule, what do you mean by sneaky, you know?

15            **THE COURT:**  Absolutely.  I'm not offended by it is

16   all I'm saying.  So if you, in talking, it looks like it's

17   been done and that kind of stuff, I'll probably let it get

18   done.  If there's some people around you that say, No, we're

19   never going to do that, and we're the Fifth Circuit, or we're

20   the Southern District and that's the way it's going to be,

21   then, you know.  But that's my feel on it one way or the

22   other.  I'm not worried too much about that.

23                   And then of course I do want some sort of

24   limitation on that 20 percent rule, but I think the rest of

25   the stuff -- well, I don't remember what all the rest of that

1      stuff was, but --

2              **MR. BURCH:**  We have a 90-day notice period --

3              **THE COURT:**  Yes.

4              **MR. BURCH:**   -- and they want I believe 45 days.

5              **MR. BROWN:**  Yes, in fact, Judge Atlas in that

6      *Blessing* case gave 45 days.

7              **MR. BURCH:**  And our only concern about that is that

8      this is a slightly larger case and -- I mean, I'd be happy to

9      go with 60, if that will get it done.

10             **THE COURT:**  Yes.  Well, we do have guys that are out

11     at sea --

12             **MR. JOSEPHSON:**  They're off shore.

13             **THE COURT:**   -- for two weeks at a time, aren't

14     they?

15             **MR. BURCH:**  Right.

16             **MR. BROWN:**  Yes, I mean, they --

17             **THE COURT:**  There, again, maybe not out at sea, but

18     they're on board ship.

19             **MR. JOSEPHSON:**   -- they may do a 28-day or a 14-

20     day --

21             **THE COURT:**  Yes.

22             **MR. JOSEPHSON:**   -- and some even stay out longer.

23             **THE COURT:**  So if we were to catch it -- well, let's

24     just say it's two weeks, that's two -- two, four, six -- what,

25     yes, that would give them two shifts on or two offs to get

1    their mail and make a response, wouldn't it?

2         **MR. BURCH:**  Well, I'm just looking at the boat days

3    that they have for Mr. Figgs, and there are stretches where

4    they've been out -- it looks like they've been out for 45

5    days.

6         **THE COURT:**  Okay.

7         **MR. BURCH:**  And so I just think -- I'm happy to do

8    60 if that --

9         **THE COURT:**  Sure.

10        **MR. BURCH:**   -- just gets it done.

11        **THE COURT:**  That's fine.  Nobody's out that long,

12   are they, that you've seen or you're aware of?

13        **MR. BURCH:**  We have clients have been out that long.

14   I mean, I think it's pretty common.

15        **MR. BROWN:**  Not for Kirby.

16        **THE COURT:**  No?  I mean, I --

17        **MR. BURCH:**  I can't get them to agree to anything.

18        **THE COURT:**  I really don't care.  I mean, if Kirby's

19   people aren't out for more than let's say three weeks at a

20   time, then that'll give them three weeks on shore to make a

21   decision and get them mailed.

22        **MR. BURCH:**  And then I think the only --

23        **THE COURT:**  Are they --

24        **MR. BROWN:**  Your Honor, if 60 days is --

25        **THE COURT:**  Yes, I mean --

1      **MR. BROWN:**   -- what their offer is, we'll agree to

2  that.

3      **THE COURT:**  Yes.  Okay.  And if you find out that

4  sometimes they're on longer than that, then that's -- let me

5  know, but I'm assuming, from what -- I know this much, it

6  looks like they're on two, off two, on two, off two.  And if

7  that's the case, 60 days gives them two shore leaves to take

8  care of their business before they go back out.  And I'm sure

9  they'll be talking to one another once this goes out, so.

10     **MR. BROWN:**  Can we go back for just a second --

11     **THE COURT:**  Sure.

12     **MR. BROWN:**   -- on the style of the case?  If we're

13  going to have the style of the case, I request there to be a

14  sentence in there that says, The Court's expressed no opinion

15  on the merits of the case.

16     **THE COURT:**  Sure.

17     **MR. BURCH:**  That's fine.

18     **THE COURT:**  That's fine.  That's fine.  No, I mean,

19  I just don't think that's going to make everybody say, Ooh,

20  the Court's really mad at Kirby and we're going to get a lot

21  of money, and they're just saying, It's just a lawsuit, I can

22  jump in or I can't.

23     **MR. JOSEPHSON:**  No, we can put that on there, it's

24  not a big deal.

25     **THE COURT:**  Yes.  Yes, see what you can do, just

1    work it out.  If you've got any wrinkles that you really need

2    my attention on, just call me.  I'll be happy to rule on it.

3          **MR. JOSEPHSON:**  And, Your Honor, the -- and I heard

4    your earlier say that they had to give us the class list so

5    that we can mail out the notice, and I thought I heard you say

6    that, because that's the --

7          **THE COURT:**  Well, I didn't say that, but I mean, how

8    else -- what else are we going to do?

9          **MR. JOSEPHSON:**  I've been accused of hearing things

10   that I want to hear --

11         **THE COURT:**  Yes.

12         **MR. JOSEPHSON:**   -- so I apologize, Your Honor.

13         **THE COURT:**  I don't remember saying -- I don't even

14   think we've talked about what they're going to have to fork

15   over in order to let you get the mailing list, but how -- what

16   else can we do other than identify those people?

17         **MR. BROWN:**  Well, in nearly ever one of the cases

18   that I've been involved with, there's been a third party

19   because they've been big cases, and we've agreed on a certain

20   day to hand over the name, the last name, mailing address, and

21   that third party -- there are lots of companies that do it.

22   They take care of it, they notify everybody the day that it

23   went out, if some of the letters bounce back because of bad

24   addresses, they let everybody know, they run traces, they send

25   it back out.

1            And the idea is that that protects the

2    integrity of the notice process so that we're not concerned,

3    well, how else got the mailing list and how is it being used,

4    and did you do -- how many letters did you send out and so

5    forth.  And so that's why we would request a third party

6    involved.

7            MR. JOSEPHSON:  Yes, we are sneaky I guess.

8        **(General laughter.)**

9            THE COURT:  What if we just put it under some sort

10   of confidentiality order?

11           MR. JOSEPHSON:  That's fine.

12           THE COURT:  I'm just trying to avoid the expense of

13   a third party.

14           MR. JOSEPHSON:  It's a key.

15           MR. BROWN:  You know, if there is a protective order

16   or a confidentiality --

17           THE COURT:  Yes.

18           MR. BROWN:  -- order, that's helpful.  I think that

19   their request was -- also included telephone numbers.  I don't

20   think telephone numbers should be included because there's no

21   reason.

22           THE COURT:  Sure.  I mean, my gut feeling is, yes,

23   that's probably right.

24           MR. JOSEPHSON:  I'm not sure if we asked for it, but

25   if we did, that's --

1          **THE COURT:**  But I don't mind doing it under a

2    protective order or something like that --

3          **MR. JOSEPHSON:**  Yes, or --

4          **THE COURT:**  -- even once the time's up, you just

5    have to return it.

6          **MR. JOSEPHSON:**  That's -- well, that --

7          **THE COURT:**  I mean, if they --

8          **MR. JOSEPHSON:**  -- you're talking the case it up,

9    it's one of those documents you give back to the Defendant.

10         **THE COURT:**  That's what I meant --

11         **MR. JOSEPHSON:**  Yes, yes.

12         **THE COURT:**  -- but you --

13         **MR. JOSEPHSON:**  That's --

14         **THE COURT:**  -- wouldn't even have to hold it until

15   the case was over, I wouldn't think.

16         **MR. JOSEPHSON:**  That's fine.

17         **THE COURT:**  If you get somebody who sends one in a

18   little late, you're going to get it.  But you don't need to

19   still have their address.

20         **MR. JOSEPHSON:**  No, no, we can put it under a

21   protective order.

22         **THE COURT:**  Yes.

23         **MR. JOSEPHSON:**  It's a little bit unusual, but --

24         **THE COURT:**  Yes.

25         **MR. JOSEPHSON:**  -- we're happy to --

1      **THE COURT:**  I understand.

2      **MR. JOSEPHSON:**   -- accommodate --

3      **THE COURT:**  But that's an easy solution to otherwise

4   a long argument.

5      **MR. JOSEPHSON:**  Yes.  No, that's -- I agree with

6   that, Your Honor, and we can -- we'll --

7      **THE COURT:**  Okay.

8      **MR. JOSEPHSON:**   -- work something out with Mr.

9   Brown.  The only remaining issue is we requested permission to

10   send out the same notice -- what if we agree to a 60-day

11   notice period, 60 days into at our expense to the people to

12   find that subsequent mailings help because people lose things

13   in the mail or they think it's junk mail and the courts have

14   been permitting that in these kinds of cases, and I think we

15   addressed it.

16      **THE COURT:**  I've never heard of it, but I've only

17   done two of them, so I don't know.

18      **MR. JOSEPHSON:**  It's just, you know, it's the nature

19   of the beast and you're dealing with people that are a little

20   bit transient because they are off shore a lot, so they may

21   not go home, some of them may have their mail forwarded.  We

22   just found that subsequent mailings further the objectives of

23   the FLSA and ensure that people receive adequate notice.

24           And I think it's particularly important if

25   we're -- with this shortened notice period, that we provide

1    them with a subsequent mailing identical to the notice that we

2    sent out and consistent with whatever the parties' agreement

3    may be in terms of who gets access to the class list.  But

4    if -- you know, it's so important to notify these people or

5    risk them actually losing their claim and never being notified

6    of the lawsuit, they're a former employee and if they aren't

7    notified, there's not a lot that we can do to protect them.

8              And again, I don't want to repeat what we said

9    in our motion, but this is a fairly common practice.  I just

10   had a judge in Illinois agree to do it in a case against Sears

11   and Kmart just the other day for the same reasons that I'm

12   explaining to you and to further the purposes of the FLSA.

13        **THE COURT:**  So you would anticipate mailing one when

14   we say go, and then mailing one 30 days later?

15        **MR. JOSEPHSON:**  Yes, sir.

16        **MR. BURCH:**  Yes.

17        **MR. BROWN:**  Your Honor, we don't think it's

18   necessary.  I mean, it's one thing to send out notice --

19        **THE COURT:**  Sure.

20        **MR. BROWN:**  -- you know --

21        **THE COURT:**  I don't think it's --

22        **MR. BROWN:**  -- the Supreme Court --

23        **THE COURT:**  -- necessary, but --

24        **MR. BROWN:**  -- has said, you know, you can't -- the

25   courts need to be careful so that there's no judicial

102

1    endorsement, you're not encouraging --

2         **THE COURT:**  Right.

3         **MR. BROWN:**   -- people to sign up.  So I think one

4    notice satisfies that.  Of course if something bounced back,

5    you know, we're glad they can put a trace on it and redeliver

6    that one.  For every case that Mr. Josephson cites, I mean, I

7    can think of a case recently, the last six months in the

8    Northern District of Texas where a judge refused to send out

9    multiple mailings, or allowed that to happen.

10             I just think that you go from --

11        **THE COURT:**  Notice to solicit --

12        **MR. BROWN:**   -- a very simple notice procedure to an

13   advertising campaign.

14        **THE COURT:**  Yes.

15        **MR. JOSEPHSON:**  Oh, how about I give you your

16   defense lawyer's name on there if you'll give us the

17   subsequent mailing.  How about that?

18             That's the spirit of compromise, Judge.  You've

19   inspired me.

20        **MR. BROWN:**  The 60 days, we compromised on that.

21        **MR. JOSEPHSON:**  No, you didn't give me --

22        **THE COURT:**  No, I decided that.

23      **(General laughter.)**

24        **THE COURT:**  I didn't hear any --

25        **MR. JOSEPHSON:**  He just got in town, he's already

1    taking credit for what you do, Judge.

2           **THE COURT:**  I'm not offended by sending a second one

3    out, but I -- oh, what the heck, sure.  That's fine.  I

4    don't -- that's fine.  So send it out originally and then 30

5    days down the line.

6                 How long will it take, John, for you to produce

7    that list pursuant to a protective order, whatever you want to

8    call it, of the potential clients?

9           **MR. BROWN:**  I don't know.

10          **THE COURT:**  Okay.

11          **MR. BROWN:**  I would think -- my guess is that within

12   two weeks we could have it all done.

13          **THE COURT:**  Okay.

14          **MR. BROWN:**  But I will look into that and contact

15   Plaintiff's counsel and give them --

16          **THE COURT:**  Okay.

17          **MR. BROWN:**   -- our best estimate.

18          **THE COURT:**  For all purposes today I'll order it so

19   that you've got at least that hanging there and you can tell

20   the clients, you know, Yes, the Judge said do it and he's

21   being a real jerk about it.  But if you need more time, well,

22   I'll give it to you, but at least we've got a deadline for it.

23               So two weeks -- today is, what, the 7th, I'll

24   give you till the Friday of -- let's see, one, two -- that

25   would be the 21st.  I don't know if you're working on the

1    23rd, but I'll make it due by the 23rd, which is the Friday,

2    so that's just a little more than two weeks.

3          MR. JOSEPHSON:  And if we can get, Your Honor, 10

4    days from the receipt, and maybe I'm -- if it's okay, Your

5    Honor, we asked for 10 days in our motion, but with the

6    holidays if it's okay if we do 15 days from receipt of the

7    names and addresses in electronic format we'll get the notice

8    out and make sure then to notify Mr. Brown once it goes out so

9    they can calculate deadlines.

10         THE COURT:  I'll tell you what, let's -- I mean,

11   I'll do that if you want, but your motivated to get it in the

12   mail, I would think.

13         MR. JOSEPHSON:  I am, and if he can get it to us

14   earlier, I'd like to get it out.  I'm just --

15         THE COURT:  All I was going to say is rather than

16   set the deadline, I'll just order that you notify us that --

17         MR. JOSEPHSON:  Okay.

18         THE COURT:  -- the first mailing has gone out --

19         MR. JOSEPHSON:  That's fine.

20         THE COURT:  -- and then that'll start it.

21         MR. JOSEPHSON:  That's fine.  And, Your Honor, I

22   hate to address Mr. Brown, but I know I need to address the

23   Court, the part about it being in electronic format, like

24   Excel or Access, is that something that the Court will agree

25   to?  That's typically how we get it, because then you can run

1   the labels and --

2           **THE COURT:**  It's fine with me.

3           **MR. JOSEPHSON:**  Okay.

4           **THE COURT:**  I mean, if -- I'm not sure I

5   completely -- you mean when you get it from --

6           **MR. JOSEPHSON:**  The actual list as opposed to Mr.

7   Brown -- I'm not saying he'll do this because he's sent me an

8   Excel spreadsheet in another case -- but as opposed to getting

9   a printout --

10          **THE COURT:**  Gotcha.

11          **MR. JOSEPHSON:**   -- of the names, the custom is here

12  it is in electronic format.

13          **MR. BROWN:**  That's what we would do.

14          **THE COURT:**  Okay.

15          **MR. JOSEPHSON:**  Okay.

16          **THE COURT:**  All right.

17          **MR. JOSEPHSON:**  Okay.

18          **THE COURT:**  Okay.  Anything else?

19          **MR. BURCH:**  Not for the Plaintiffs, Your Honor.

20          **THE COURT:**  So --

21          **MR. BROWN:**  Well -- I'm sorry.

22          **THE COURT:**  Yes.

23          **MR. BROWN:**  I have one remaining issue, and that had

24  to do --

25          **THE COURT:**  Yes.

1     **MR. BROWN:**   -- with what if the notice would

2     mention that there may be an obligation to participate in

3     discovery and testify.  And we would just ask for a simple

4     sentence that says, you know, If you participate in the case,

5     you may be called on to answer written questions, testify by

6     deposition, or testify in court.

7          **THE COURT:**  Is it typically included, or is it just

8     something you dreamed up that you thought --

9          **MR. BROWN:**  No, and I'll tell you --

10          **THE COURT:**   -- sounded neat?

11          **MR. BROWN:**   -- Your Honor, the fact of the matter

12     is, on any of these issues there are cases going both ways.

13          **THE COURT:**  Sure.

14          **MR. BROWN:**  I mean, our idea is that when somebody

15     is making a decision about whether to participate, they should

16     understand that there may be a time when they're called to

17     participate in discovery or testify.  I just think that that's

18     full disclosure for the potential Plaintiffs.

19          **THE COURT:**  You mean and it's opposed to one of

20     these things like I get from American Express that somewhere

21     in the future you might get a dollar because you've paid too

22     much interest, but don't do anything, don't worry about it,

23     that kind of thing?

24          **MR. BROWN:**  Well, the other --

25          **MR. JOSEPHSON:**  It's worse than that.

1      **MR. BROWN:**   -- and sometimes in these cases it
2  happens that somebody signs up and then they're selected to
3  participate in discovery, and, you know, they don't.  So we
4  have to go through process.  So I think it's better to tell
5  somebody up front that there's a chance that you may be called
6  upon to get into discovery.

7      **THE COURT:**  I'll tell you what, I'm not going to say
8  no, but you guys are going to try to get together and put
9  something together, and if you'll let me know the exact
10  language you want to put in there and -- because sooner or
11  later I'm going to have to sign an order that says, This is
12  the form of the notice that goes out.  Right?

13      **MR. JOSEPHSON:**  Sure.  The issue that -- this is
14  something that I feel real strong about, Your Honor --

15      **THE COURT:**  I understand.

16      **MR. JOSEPHSON:**   -- and there's some areas where we
17  can be flexible.  As I mentioned, when we were talking about
18  the second stage in trial, I mean, nobody knows what the
19  discovery is going to be.  I mean, the case I had with Mr.
20  Brown, he served 38 boxes of discovery, it was like 10,000
21  sets, and the Court I think ordered only 10 percent of the
22  Plaintiffs to answer that discovery.  And so you never know --

23      **THE COURT:**  I understand.

24      **MR. JOSEPHSON:**   -- what's going to happen, and my
25  experience is that those statements which misrepresent the law

1    and are I think a little bit misleading, they tend to chill

2    participation, and I can't think of a proposal concerning

3    someone's obligation to participate that I could ever agree

4    to --

5            **THE COURT:**  I understand.

6            **MR. JOSEPHSON:**   -- because it's so inconsistent

7    with so many standards that are out there, and there's really

8    not a way to include something like that without including the

9    counter-argument as well.  And I'll give you an example.

10           There are lots of times where I've seen parties

11   suggest that they give the Court -- to the class members an

12   example of how their damages would be calculated.  Now the

13   Plaintiffs argue, Well, they need to know, kind of like what

14   Mr. Brown said, what they're getting into so they can make an

15   informed decision about how the damages may be calculated.

16   Then the defense lawyer will say, Oh, no, no, no, they may not

17   even get damages so it's impossible to include that language.

18           Well, it's the same thing here.  You have

19   plenty of cases where people don't do anything other than send

20   their consent form in, and to say you're going to have to do

21   this or you're going to have to do that, the only purpose it

22   serves is to dissuade them from participating.

23           **THE COURT:**  And that's why I said show me what you

24   really want after you attempt to agree on something and I'll

25   either say it --

1          **MR. JOSEPHSON:**  Okay.

2          **THE COURT:**  -- does that or it doesn't, or modify

3  it, or refuse to put it in.  But give it a shot.  I'm not

4  opposed completely to it, so see what you can get.  If you can

5  tinker with it so it's real neutral, and you tell me, We're

6  not fighting over it, great.  But if I have to make a

7  decision, I'll take a look at the Defendant's proposal and say

8  go with it.

9          How quickly do you think you'll be able to get

10  together, talk about it, and come up with as close to the

11  final form as you need to and need my assistance on any loose

12  ends?

13          **MR. BURCH:**  I feel like we ought to be able to

14  submit something by 5:00 p.m. on Monday, I would think.

15          **THE COURT:**  I'm just asking.

16          **MR. JOSEPHSON:**  Yes, that's doable.

17          **THE COURT:**  Okay.  So what should I call that?

18          **MR. JOSEPHSON:**  Proposed notice?

19          **MR. BROWN:**  Submission of proposed notice.

20          **THE COURT:**  Okay.  Proposed notice.  And if it's not

21  agreed to, you can just submit it to me, because it won't be

22  filed, you know, just email it and say, This is what I got,

23  and if you want to, just highlight those areas that you've got

24  a problem with.  If there's really any case law you want me to

25  read, I can, but then I'll set up a phone call as promptly as

1    I can.  That'll be December 12.  Right?

2              **MR. JOSEPHSON:**  Yes, sir.

3              **THE COURT:**  Okay.  And if we need to talk, we can --

4    I'll have Sheila set something up either Tuesday or Wednesday

5    morning, if you can be available for that.  Or even December

6    12 itself if it gets in here before five o'clock.

7              **MR. JOSEPHSON:**  Okay.

8              **THE COURT:**  What else?  Anything, while you're here?

9    You've got my undivided attention, if I can help out, let me

10   know.

11             **MR. BURCH:**  I don't think we have anything else,

12   Your Honor.

13             **MR. JOSEPHSON:**  Not for the Plaintiffs, Your Honor.

14             **THE COURT:**  Okay.  John?

15             **MR. BROWN:**  Nothing further, Your Honor.

16             **THE COURT:**  Okay.  Good deal.  I'll try to cobble

17   together whatever I did in an order and get it to you.  And if

18   anything comes up, let me know.

19             **MR. JOSEPHSON:**  Okay.

20             **MR. BURCH:**  Do you want us to submit a proposed

21   order with our joint notice, just saying, you know, it's been

22   granted and here's a --

23             **THE COURT:**  Well, I'll do that today, and then I'll

24   just get the proposed notice.  But if there's some magical

25   words that need to be in the order --

1          **MR. BURCH:**  No, I'm just -- you've been kind enough

2     to indulge us --

3          **THE COURT:**  Oh, for heaven's sake.

4          **MR. BURCH:**   -- for hours, I feel like I should --

5          **THE COURT:**  No problem.

6          **MR. BURCH:**   -- do something for you.

7          **THE COURT:**  No, that's fine.

8      **(General laughter.)**

9          **THE COURT:**  I'd rather get it done than wait on it.

10    Now I can do that today, that'll be no problem.  But it's just

11    going to be sort of hitting the highlights and then, like I

12    say, if there's anything more I need to do as far as an order

13    that you need to have in this kind of a case, yes, then I'm

14    going to rely on your expertise.  But if it's just --

15         **MR. BURCH:**  Okay.

16         **THE COURT:**   -- a matter of regurgitating what

17    I've -- what rulings I did today, I can do that.

18         **MR. BURCH:**  Okay, Your Honor.

19         **THE COURT:**  Okay.  Good.

20         **MR. BURCH:**  All right.  Thank you, Judge.

21         **MR. JOSEPHSON:**  Thank you.

22         **MR. BURCH:**  May we be excused?

23         **THE COURT:**  Sure.  You bet.

24         **MR. BURCH:**  Thank you.

25         **THE COURT:**  Sorry it took so long.

1      (The hearing concluded at 12:44 p.m.)

2   * * * * *

3   *I certify that the foregoing is a correct transcript from the*

4   *electronic sound recording of the proceedings in the*

5   *above-entitled matter.*

6   */s mhenry*

7   _____

8   *JUDICIAL TRANSCRIBERS OF TEXAS, INC.*

9   *JTT INVOICE # 29573*

10  *DATE:  DECEMBER 29, 2011*

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25